Markman, J.
We granted leave to appeal to consider the following three issues: (1) whether, and to what extent, MCL 600.6304 permits a trier of fact in a medical malpractice action to consider the plaintiffs own pre-treatment negligence to offset, at least in part, the defendant’s fault; (2) whether the medical malpractice noneconomic damages cap of MCL 600.1483 applies to a wrongful death action based on an underlying claim of medical malpractice, and assuming such cap applies, whether an action filed under the wrongful death act is subject to the higher medical malpractice noneconomic *546 damages cap of § 1483; and (3) whether, and to what extent, MCL 600.6311 applies in a wrongful death action. Regarding the first issue, the Court of Appeals affirmed the trial court’s decision that MCL 600.6304(1) did not permit the trier of fact to offset defendants’ fault on the basis of plaintiffs alleged pre-treatment negligence.[1] On the basis of the clear and unambiguous language of § 6304(1), we hold that a trier of fact is permitted in “personal injury, property damage, [and] wrongful death” tort actions, which necessarily include medical malpractice actions, to consider a plaintiffs pretreatment negligence in offsetting a defendant’s fault where reasonable minds could differ with regard to whether such negligence constituted “a proximate cause” — a foreseeable, natural, and probable cause — of the plaintiffs injury and damages. Further, on the basis of the evidence presented, we believe that reasonable minds could find that- plaintiff s pre-treatment negligence in this case — her failing to regularly take her prescribed blood pressure medication during the year preceding her fatal stroke — constituted a foreseeable, natural, and probable cause of her fatal stroke, and thus we remand this case to the trial court for proceedings consistent with the opinions of this Court.
Regarding the second issue, the Court of Appeals affirmed the trial court’s decision that the higher medical malpractice noneconomic damages cap of § 1483 applies to a wrongful death action. Consistent with our recent decision in Jenkins v Patel, 471 Mich 158, 173; 684 NW2d 346 (2004), in which we held that the medical malpractice noneconomic damages cap of MCL 600.1483 applies to a wrongful death action based on an underlying claim of medical malpractice, we affirm the decisions of both lower courts and hold that the higher *547 medical malpractice noneconomic damages cap of § 1483 applies where the injured person, at any time before his death and as a result of a defendant’s negligent conduct, fits within the ambit of MCL 600.1483(l)(a), (b), or (c).
Regarding the third issue, the Court of Appeals, finding that MCL 600.6311 applies in this case because both the personal representative and the decedent were or would have been sixty years of age or older at the time of judgment, affirmed the trial court’s decision that plaintiffs award of future damages should not be reduced to present value. Because the term “plaintiff,” as used in § 6311, refers, for purposes of a wrongful death action, to the decedent, and because Mrs. Shin-holster, the decedent, was sixty-one at her death and at the time of judgment, we agree with the trial court’s interpretation of § 6311, and hold that, on remand, the trial court cannot reduce any future damages awarded to plaintiff to their present value.
I. BACKGROUND
In this medical malpractice action, Betty Shinholster (Shinholster), the decedent, made four visits to defendant Annapolis Hospital in April 1995, complaining of dizziness. Defendant Dr. Dennis Adams (Adams)[2] examined plaintiff on April 7 and April 10, and defendant Dr. Mary Ellen Flaherty (Flaherty) examined Shinholster on April 14. Shinholster’s fourth visit on April 16 was precipitated by a massive stroke, after which she entered a coma for several months and died at the age of sixty-one. On behalf of his deceased wife, Johnnie Shinholster filed suit against Adams, Flaherty, and *548 Annapolis Hospital, alleging that they had negligently treated his wife on April 10 and April 14 by failing to recognize that she had been experiencing transient ischemic attacks, or “mini-strokes” that often precede a full-blown, serious stroke.
The jury found in plaintiffs favor and awarded the following damages: (1) $220,000 for past economic damages; (2) $564,600 for past noneconomic damages; (3) $9,700 each year in future economic damages for the years 1999 through 2003; and (4) $62,500 each year in future noneconomic damages for the years 1999 through 2003. The jury further concluded that Shinholster had been twenty percent comparatively negligent in her actions after April 7, 1995, by not regularly taking her prescribed blood pressure medication. Consistent with the jury’s verdict, the trial court entered judgment for plaintiff in the amount of $916,480, “subject to any applicable statutory limitation, statutory cap, adjustment regarding the computation of comparative negligence or adjustment pursuant to the collateral source rule.” The trial court denied defendants’ motion for reconsideration. The Court of Appeals affirmed but remanded for the recalculation of damages. Shinholster v Annapolis Hosp, 255 Mich App 339, 360; 660 NW2d 361 (2003). Defendants now appeal to this Court.
II. STANDARD OF REVIEW
Statutory interpretation is an issue of law that is reviewed de novo. People v Morey, 461 Mich 325, 329; 603 NW2d 250 (1999).
III. ANALYSIS
This Court’s primary task in construing a statute is to discern and give effect to the intent of the Legisla *549 ture. Murphy v Michigan Bell Tel Co, 447 Mich 93, 98; 523 NW2d 310 (1994). “The words of a statute provide ‘the most reliable evidence of [the Legislature’s] intent ....’” Sun Valley Foods Co v Ward, 460 Mich 230, 236; 596 NW2d 119 (1999), quoting United States v Turkette, 452 US 576, 593; 101 S Ct 2524; 69 L Ed 2d 246 (1981). In discerning legislative intent, a court must “give effect to every word, phrase, and clause in a statute .. ..” State Farm Fire & Cas Co v Old Republic Ins Co, 466 Mich 142, 146; 644 NW2d 715 (2002). The Court must consider “both the plain meaning of the critical word or phrase as well as ‘its placement and purpose in the statutory scheme.’ ” Sun Valley, supra at 237, quoting Bailey v United States, 516 US 137, 145; 116 S Ct 501; 133 L Ed 2d 472 (1995). “The statutory language must be read and understood in its grammatical context, unless it is clear that something different was intended.” Sun Valley, supra at 237. “If the language of a statute is unambiguous, the Legislature must have intended the meaning clearly expressed, and the statute must be enforced as written.” Id. at 236.
A. PLAINTIFF’S PRE-TREATMENT NEGLIGENCE
1. MCL 600.6304
MCL 600.6304 generally provides that the trier of fact in a tort action shall determine by percent the comparative negligence of all those who are a proximate cause of the plaintiffs injury and subsequent damages. In relevant part § 6304 provides:
(1) In an action based on tort. .. seeking damages for personal injury... or wrongful death involving fault of more than 1 person,... the court... shall instruct the jury to answer special interrogatories or, if there is no jury, shall make findings indicating both of the following:
*550 (a) The total amount of each plaintiffs damages.
(b) The percentage of the total fault of all persons that contributed to the death or injury, including each plaintiff....
(2) In determining the percentages of fault under subsection (l)(b), the trier of fact shall consider both the nature of the conduct of each person at fault and the extent of the causal relation between the conduct and the damages claimed.
(6) If an action includes a medical malpractice claim against a person or entity described in section 5838a(l), 1 of the following applies:
(a) If the plaintiff is determined to be without fault under subsections (1) and (2), the liability of each defendant is joint and several....
(b) If the plaintiff is determined to have fault under subsections (1) and (2)... the court shall determine whether all or part of a party’s share of the obligation is uncollectible from that party, and shall reallocate any uncollectible amount among the other parties ....
(8) As used in this section, “fault” includes an act, an omission, conduct, including intentional conduct, a breach of warranty, or a breach of a legal duty, or any conduct that could give rise to the imposition of strict liability, that is a proximate cause of damage sustained by a party.[3]
*551 On the basis of this statute, defendants contend that the trial court erred in not allowing the jury to consider Shinholster’s behavior as manifesting comparative negligence when she failed to regularly take her prescribed blood pressure medication for at least a year before her first visit to the emergency room.
While the Court of Appeals acknowledged that § 6304, on its face, requires a trier of fact to consider such negligence, it nonetheless relied on inferences drawn from this Court’s decision in Podvin v Eickhorst, 373 Mich 175; 128 NW2d 523 (1964), and authority from other states to reach its holding that the statute did not control the situation.
The Court of Appeals erred, in our judgment. Subsection 6304(l)(b) is unambiguous and calls for the trier of fact to assess by percentage “the total fault of all persons that contributed to the death or injury, including each plaintiff,” (emphasis added), as long as that fault constituted a proximate cause of the plaintiffs injury and subsequent damage.[4]
With regard to what cause constitutes proximate cause,[5] in Parks v Starks, 342 Mich 443, 448; 70 NW2d 805 (1955), we quoted with approval the following from 38 Am Jur, Negligence, § 55, p 703:
“The proximate cause of an injury is not necessarily the immediate cause; not necessarily the cause nearest in time, *552 distance, or space. Assuming that there is a direct, natural, and continuous sequence between an act and an injury, * * * the act can be accepted as the proximate cause of the injury without reference to its separation from the injury in point of time or distance.”
Thus, under § 6304, if a defendant presents evidence that would allow a reasonable person to conclude that a plaintiffs negligence constituted a proximate cause of her injury and subsequent damage,[6] the trier of fact must be allowed to consider such evidence in apportioning fault.[7]
With regard to the Court of Appeals and Justice CAVANAGH and Justice WEAVER’S reliance, in their concurrence/dissents, on out-of-state authority reaching a different conclusion than our Legislature did on this issue, we presume that the legislators were aware of those approaches and chose to depart from them in establishing Michigan law.[8]
*553 Moreover, the Court of Appeals reliance on inferences drawn from Podvin (the plaintiffs negligence in causing a car accident could not be cited as contributory negligence for subsequent medical malpractice in treating car accident injuries) is misplaced. This case is not relevant because it was decided at a time when any contributory negligence barred a plaintiffs lawsuit. If it was ever relevant, it stopped being so when this Court adopted pure comparative negligence. Placek v Sterling Hts, 405 Mich 638, 701; 275 NW2d 511 (1979). Moreover, to the extent that the inferences drawn from Podvin are inconsistent with MCL 600.6304, the statute must prevail.
The Court of Appeals also erred by mischaracterizing Shinholster’s conduct as merely creating the condition that led her to seek treatment. Decedent’s conduct may have done more than that. Her failure to properly take her medications may in fact have constituted a proximate cause of her death.[9]
*554 2. LIMITED REMAND
Because the trial court ruled that not all decedent’s pre-treatment negligence could be considered, defendants were limited to submitting evidence that decedent was comparatively negligent only from April 7 onward, when she first visited the emergency room. Yet, it is apparent from that testimony that, had a wider scope of questioning been allowed, just as defendants’ expert testimony supported the proposition that failure for ten days (April 7 through April 16) to regularly take her medications constituted a proximate cause,[10] it may *555 well have supported the same conclusion for a greater period. Accordingly, the trial court clearly erred in precluding evidence made admissible by § 6304, and this prevented defendants from receiving a fair trial *556 with regard to the apportionment of damages. MCR 2.611(A)(1)(a). Because the jury in this case has already determined that defendants breached their standard of care, a determination that I note defendants have never appealed,[11]1 would reverse the judgment of the Court of Appeals and remand this case for calculation of damages only, ordering that the jury be permitted to consider Shinholster’s pre-treatment negligence in apportioning fault concerning plaintiffs damages.
While I do not dispute the correctness of the Chief Justice’s analysis in her concurrence/dissent concerning the prima facie elements of a tort cause of action, post at 586-587, I nonetheless believe that such analysis must be placed within the proper context. In a tort action, the plaintiff bears the burden of proving his prima facie case by demonstrating, as the Chief Justice has noted: (1) duty, (2) breach, (3) proximate causation, and (4) damages. If in this case, plaintiff had been permitted to present evidence demonstrating defen *557 dant’s breach — which evidence was later held to be inadmissible — a remand for an entirely new trial might well be required, because such evidence would, in fact, implicate whether defendant had breached a duty, and, therefore, whether plaintiff had satisfied the prima facie elements of a tort action.
In the instant case, as in all tort actions, plaintiff bore the burden of proving her prima facie case, irrespective of her own negligent conduct. It was only after the jury determined that plaintiff had satisfied this burden, and that defendants were liable, that the jury should have considered whether defendants satisfied their burden of demonstrating that, despite their own liability, they were not exclusively liable because plaintiff herself was also negligent. Because the challenged evidence in this case has nothing to do with defendants’ conduct, and thus nothing to do with whether plaintiff has satisfied her prima facie tort case, I believe that the Chief Justice’s assertion that “[l]imiting the new trial to damages only ignores the important fact that proximate cause is essential to a plaintiffs prima facie case,” is incorrect. Post at 587.
It is important to remember that the conduct of plaintiff, not that of defendants, is at issue here, and that the issue is whether defendants satisfied their burden of demonstrating that, although liable, they are not exclusively liable for plaintiffs injury.[12] That is, we *558 are not considering whether plaintiff satisfied her initial burden of proof relating to whether defendants were a proximate cause of her injury and, thus, are hable.[13]
Certainly, defendants could have argued that, had the jury been permitted to consider plaintiffs pre-treatment negligence, it would not have found that defendants had breached their standard of care at all or that defendants’ breach constituted a proximate cause of plaintiffs injury. However, defendants did not make such an argument. Instead, they argued only that evidence of plaintiffs own negligence should be considered by the jury in order to *559 determine the extent to which defendants were liable for plaintiffs injury. (Defendants alleged: “Had the jury been properly instructed [concerning plaintiffs pretreatment negligence], it is likely that the percentage of her comparative fault would have been determined at a much higher level.”)[14]
B. CAP ON NONECONOMIC DAMAGES
For the reasons stated in Jenkins, supra at 166-173, we hold that the noneconomic damages cap found in MCL 600.1483 applies to a wrongful death action based on an underlying claim of medical malpractice.
*560 MCL 600.1483 contains two caps on noneconomic damages and provides:
(1) In an action for damages alleging medical malpractice by or against a person or party, the total amount of damages for noneconomic loss recoverable by all plaintiffs, resulting from the negligence of all defendants, shall not exceed $280,000.00 unless, as the result of the negligence of 1 or more of the defendants, 1 or more of the following exceptions apply as determined by the court pursuant to section 6304, in which case damages for noneconomic loss shall not exceed $500,000.00:
(a) The plaintiff is hemiplegic, paraplegic, or quadriplegic resulting in a total permanent functional loss of 1 or more limbs caused by 1 or more of the following:
(i) Injury to the brain.
(ii) Injury to the spinal cord.
(b) The plaintiff has permanently impaired cognitive capacity rendering him or her incapable of making independent, responsible life decisions and permanently incapable of independently performing the activities of normal, daily living.
(c) There has been permanent loss of or damage to a reproductive organ resulting in the inability to procreate.
While defendants have not contested that, as a result of her stroke, Shinholster satisfied § 1483(l)(a) and (b), they and the Chief Justice contend that the higher damages cap applies only if the injured person continues to suffer one of the enumerated conditions set forth in § 1483 at the time of judgment. Post at 592-593. Because Mrs. Shinholster was dead at the time of judgment, defendants and the Chief Justice reason that the higher cap cannot apply. In support of their position, they rely upon the fact that the statute specifically uses the present tense of verbs, i.e., “is” and “has,” and that the statute provides that the lower tier is to apply *561 unless, as the result of the negligence of 1 or more of the defendants, “ 1 or more of the following exceptions apply as determined by the court pursuant to section 6304 ... Post at 593 (emphasis added). Because a trial court reduces damages pursuant to § 6304 only after the jury has rendered its verdict, defendants and the Chief Justice conclude that the present tense verbs in the statute refer to that precise moment in time at which “the trial court makes its post-verdict determination concerning whether the cap requires adjustment of the verdict.” Post at 592-593.[15] While the trial court noted that the Legislature used the present tense words “is . . . hemiplegic,” it also observed that the Legislature did not specify at which time plaintiff must have sustained that condition for the higher cap to apply. The trial court disagreed with defendants’ construction of the statute and ruled:
[T]he only sensible way to interpret the statute is to hold that the Legislature intended [the higher cap] to apply to people who had been rendered cognitively incapable, quadriplegic, etc., from the accident in question. Betty Shinholster met this condition here: as the jury found, she suffered the requisite injuries from the accident — she endured these injuries in the several months she lay in a coma before she died. We thus hold that the higher, $500,000 cap applies.
The Court of Appeals agreed with the trial court:
*562 We construe the statute in accordance with the trial court’s ruling. Indeed, the adoption of defendants’ position would lead to absurd and unfair results. For example, a person who endured months of paraplegia caused by medical malpractice but died of an unrelated and independent cause before the court’s verdict adjustments would be subject to the lower cap, whereas a similar person who died a day after the court’s verdict adjustments would be subject to the higher cap. We view the better approach to be that advocated by plaintiff and adopted by the trial court. Under this approach, the point of reference for determining whether the injured person fits within MCL 600.1483(l)(a), (b), or (c) is anytime after and as a result of the negligent action. Therefore, because Shinholster was rendered incapacitated by defendants’ negligence, the higher cap applies. [Shinholster, supra at 354.]
We agree with the results reached by the lower courts and hold that § 1483 permits a plaintiff to recover a maximum of $500,000 in medical malpractice noneconomic damages if, as a result of the defendant’s negligent conduct, the plaintiff at some point thereafter, and while still living, suffered one of the enumerated conditions of § 1483. We base this interpretation on several textual indicators contained in § 1483 and other pertinent statutes.
First, this interpretation of § 1483 is consistent with the text of the statute itself, which, as noted, provides that the lower tier applies “unless, as the result of the negligence of 1 or more of the defendants, 1 or more of the following exceptions apply.. ..” (Emphasis added.) As long as, at some point after the defendant’s alleged negligence occurred and before the decedent’s death, it could be said that, “as the result of the negligence of 1 or more of the defendants .. . [t]he plaintiff is hemiplegic” or the plaintiff “has permanently impaired cognitive capacity” or “[t]here has been permanent loss of or damage to a reproductive organ,” the higher damages *563 cap tier applies.[16] Not only is this understanding of § 1483, and specifically its use of the present tense of verbs, consistent with this Court’s decision in Michalski v Bar-Levav, 463 Mich 723, 732-733; 625 NW2d 754 (2001) (construing provisions of the Handicappers Civil Rights Act, MCL 37.1101, which are also written in the present tense, yet holding that the “present” tense refers to events existing during the pendency of the plaintiffs employment, when her cause of action arose), but it also avoids the arguably incongruous results about which the trial court and Court of Appeals were concerned.[17]
*564 Second, we believe that the text of the wrongful death act, MCL 600.2922(1), (2), and (6), provides additional support for our understanding of § 1483. These provisions state that “the personal representative of the estate of the deceased person” be able to “maintain an action and recover damages [against] the person who or the corporation that would have been liable, if death had not ensued . . ..” Subsection 2922(6) expressly permits the deceased’s estate to recover “reasonable compensation for the pain and suffering, while conscious, undergone by the deceased person during the period intervening between the time of the injury and death . . . .” Accordingly, while we agree with the Chief Justice that the Legislature is free to make “a policy decision that the survivors of dead medical malpractice victims are entitled to lesser damages than are living medical malpractice victims who are suffering from one of the three types of permanent conditions enumerated in [§ 1483],” post at 592, we see no indication in the statute that the Legislature, in fact, made such a decision; rather, we believe that the Legislature made a quite contrary policy decision in § 2922(1), (2), and (6) by permitting a decedent’s estate to recover everything that the decedent would have been able to recover had she lived.
Third, we believe that the interplay between the wrongful death act, particularly § 2922(6), and § 1483 provides additional textual support for our understand *565 ing of § 1483. Subsection 2922(6) states that in a wrongful death action “the court or jury may award .. . reasonable compensation for the pain and suffering, while conscious, undergone by the deceased person during the period intervening between the time of the injury and death .. . .” (Emphasis added.) Section 1483 provides that pain and suffering resulting from certain enumerated injuries are compensable at a higher rate. Thus, the Legislature has apparently determined that “reasonable compensation” for such pain and suffering may sometimes be in excess of $280,000. However, by concluding that, no matter what type of injuries resulted in a decedent’s death, survivors in a wrongful death action may never recover under § 1483’s higher cap if the decedent is dead at the time of judgment, defendants and the Chief Justice effectively preclude the awarding of “reasonable compensation” under § 2922(6) for the conscious pain and suffering undergone by at least some decedents before their death, where such pain and suffering resulted from one of the enumerated injuries in § 1483. That is, we believe that defendants and the Chief Justice overlook the express directive of § 2922(6) that the jury may award “reasonable compensation” for a decedent’s conscious pain and suffering — compensation which, in the Legislature’s estimation, may sometimes be in excess of $280,000 if conscious pain and suffering results from an injury enumerated in § 1483.
Finally, in asserting that the higher damages cap of § 1483 applies only where the plaintiff is suffering one of the conditions enumerated in the statute at the time of judgment, we believe that defendants and the Chief Justice give extraordinary and undue weight to the fact that the Legislature has used the present tense of the verbs in § 1483(1) (a) and (b). Particularly, in concluding that “the structure of § 1483(1) indicates that the *566 Legislature intended that an exception, if it is applicable, apply at the time [of judgment],” post at 592, we note that the Chief Justice fails to ensure that her own interpretation of § 1483 is consistent with the Legislature’s use of the verb tense “has been” in § 1483(l)(c). This use of the past tense of the verb indicates an intention by the Legislature that an injured party need not always be alive at the time of judgment for the higher cap to apply, but rather only have suffered, at some point in the past as the result of a defendant’s negligent conduct, the type of injury enumerated in § 1483(l)(c).
Further, we note that, had the Legislature truly intended that an injured party must continue to suffer the higher tier injury at the time of judgment, it knew how to make that intent specific, as shown by MCL 600.6311, infra, in which the Legislature states that this provision is to apply if “a plaintiff... is 60 years of age or older at the time of judgment” (Emphasis added.) Unlike § 6311, § 1483 does not provide such a clear temporal framework. Moreover, had the Legislature intended that the term “is,” as used in § 6311, mean what defendants and the Chief Justice assert it means in § 1483 (i.e., at the time of judgment), we see no indication in § 6311 that the Legislature qualified the term within the temporal framework of “at the time of judgment.”
Defendants and the Chief Justice fail to explain why the use of the present tense of verbs in § 1483(l)(a) and (b) demonstrates that the Legislature intended that a plaintiff suffer from one of the enumerated conditions at the time of judgment, rather than at the time the action is filed, the jury is selected, opening statements are made, the first witness takes the stand, closing statements are made, at the beginning of jury delibera *567 tions, or at the time at which the jury renders its verdict.[18] Defendants and the Chief Justice assert that the Legislature showed an intent to set the temporal framework at the time of judgment by stating that the higher tier exception applies “as determined by the court pursuant to section 6304 . . . .” However, in our judgment, references in § 1483 to § 6304 serve merely to clarify under which statute the court is authorized and required to reduce the damages award consistent with § 1483. We do not read into this reference a legislative intent to bar a plaintiff, whose decedent has suffered while still alive and has suffered “as the result of the negligence of 1 or more of the defendants, 1 or more of the following [injuries],” from recovering pursuant to the higher tier merely because the plaintiffs decedent was unfortunate enough to die before the post-verdict damages determination. Rather, on the basis of the statutory language previously discussed, we believe that the better interpretation of the statute is that, as long as a plaintiff suffers, while still living and as a result of a defendant’s negligent conduct, one of the enumerated conditions set forth in § 1483, the statute’s higher damages cap applies.
Because plaintiff in this case presented evidence from which it could be rationally concluded that, “as the *568 result of the negligence of 1 or more of the defendants,” it could have been said at some time before her death that she “is hemiplegic, paraplegic, or quadriplegic [as a result of] [i]njury to the brain,” or “has permanently impaired cognitive capacity,” we agree with the determination made by the lower courts that the higher damages cap of § 1483 applies under the circumstances of this case.
C. MCL 600.6311
While MCL 600.6306(l)(c), (d), and (e) provide that all future damages awarded to a plaintiff be reduced to gross present value,[19] MCL 600.6311 creates an exception to this general rule by stating, “Sections 6306(l)(c), (d), and (e)... do not apply to a plaintiff who is 60 years of age or older at the time of judgment.” Thus, only when a plaintiff is younger than sixty years of age at the time of judgment, must the trial court reduce the plaintiffs future damages to present cash value.
*569 Plaintiff asserts that, for purposes of § 6311, the term “plaintiff” in a wrongful death action is either the personal representative or the decedent, based on the age that the decedent would have been had she been alive at the time of judgment. On the other hand, defendants and the Chief Justice contend that § 6311 is a limited exception that does not apply to a wrongful death action because the “plaintiff” in such an action is the estate, which cannot have an age. Post at 596.
The trial court held that, for purposes of § 6311, the term “plaintiff” refers to the decedent in a wrongful death case, and that because Shinholster was sixty-one at the time of her death, she necessarily would have been “60 years of age or older at the time of judgment.” Thus, § 6306(l)(c), (d), and (e) do not apply. Although the Court of Appeals found that § 6311 is “ambiguous with regard to the term ‘plaintiff as applied to wrongful death cases,” Shinholster, supra at 357, that Court declined to resolve the issue, holding that § 6311 applies because both the personal representative and the decedent were or would have been sixty years of age or older at the time of judgment:
MCL 600.6311 specifically refers to “a plaintiff who is 60 years of age or older ...” (emphasis added). Accordingly, we could potentially hold that because the plaintiff here— Shinholster’s personal representative — was over sixty, the MCL 600.6311 exception applied. However, we note that MCL 600.6306 also uses the term “plaintiff” in referring to comparative negligence. See MCL 600.6306(3)(“the total judgment amount shall be reduced ... by an amount equal to the percentage of plaintiffs fault”). Clearly, this reference to “plaintiff” is not a reference to a personal representative in a wrongful death case, because the personal representative would not be the one evaluated for comparative negligence; instead, the decedent would be so evalu *570 ated. We conclude that the statues at issue are essentially ambiguous with regard to the term “plaintiff” as applied to wrongful death cases.
However, it is not necessary, in the instant case, to resolve the ambiguity in MCL 600.6311. Indeed, both the “plaintiff” (i.e., the personal representative and the person who brought the lawsuit) and the decedent in this case satisfied the MCL 600.6311 exception. Accordingly, the trial court did not err by refusing to reduce the amount of future damages to present value. [Shinholster, supra at 356-357.]
The doctrine of noscitur a sociis, i.e., that “a word or phrase is given meaning by its context or setting,” affords us some assistance in interpreting § 6311. See G C Timmis & Co v Guardian Alarm Co, 468 Mich 416, 420; 662 NW2d 710 (2003). We apply this doctrine to include the other provisions of Chapter 63 of the Revised Judicature Act because the term “plaintiff” does not stand alone here, and cannot be read in a vacuum. Instead, “[i]t exists and must be read in context with the entire act, and the words and phrases used there must be assigned such meanings as are in harmony with the whole of the statute . . . .” Arrowhead Dev Co v Livingston Co Rd Comm, 413 Mich 505, 516; 322 NW2d 702 (1982). “Although a phrase or a statement may mean one thing when read in isolation, it may mean something substantially different when read in context.” G C Timmis & Co, supra at 421.
MCL 600.6305(2) provides, in part:
In the event of death, the calculation of future damages shall be based on the losses during the period of time the plaintiff would have lived but for the injury upon which the claim is based.
Further, MCL 600.6306(3) provides, “If the plaintiff was assigned a percentage of fault. . . the total judgment amount shall be reduced ... by an amount equal *571 to the percentage of plaintiffs fault.” As described by the Court of Appeals, these “reference^] to ‘plaintiff [are] not.. . reference^] to a personal representative [or an estate] in a wrongful death case, because [neither] would... be the one evaluated for comparative negligence; instead, the decedent would be so evaluated.” Shinholster, supra at 357.[20] We agree with the trial court and hold that, for purposes of § 6311, the term “plaintiff” refers to the decedent, Mrs. Shinholster.
However, our inquiry into the application of § 6311 in the instant case does not stop there. Rather, § 6311 states that it applies if the plaintiff is “60 years of age or older at the time of judgment.” (Emphasis added.) Because the term “plaintiff” refers to the decedent in a wrongful death action, and because Shinholster was sixty-one at her death and at the time of judgment,[21] we agree with the trial court’s interpretation of § 6311, and hold that, on remand, the trial court cannot reduce any future damages awarded to plaintiff to their present value.
IV CONCLUSION
Because § 6304(1) requires, without exception, that a trier of fact be permitted in all “personal injury, property damage, [and] wrongful death” tort actions to consider the conduct of all parties whose conduct has constituted a proximate cause of plaintiffs damages, *572 and because, on the basis of the evidence presented by defendants, reasonable minds could find that plaintiffs pre-treatment negligence here constituted “a proximate cause” — a foreseeable, natural, and probable cause — of her fatal stroke, we remand this case to the trial court for proceedings consistent with the opinions of this Court. Further, based on our decision in Jenkins, where we held that the medical malpractice noneconomic damages cap of § 1483 applies to a wrongful death action based on an underlying claim of medical malpractice, we affirm the decisions of both lower courts and hold that the higher cap of § 1483 applies when the injured person, at any time while still living and as a result of a defendant’s negligent conduct, fits within the ambit of § 1483 (l)(a), (b), or (c). Finally, because the term “plaintiff,” as used in § 6311, refers, for purposes of a wrongful death action, to the decedent, and because Mrs. Shinholster, the decedent, was sixty-one at her death and at the time of judgment, we agree with the trial court’s interpretation of § 6311, and hold that the trial court cannot reduce any future damages award to plaintiff to their present value.
Corrigan, C.J., and Taylor and Young, JJ., joined in section 111(A) and with the determination in section III(B) that the medical malpractice cap of § 1483 applies to a wrongful death action based on an underlying claim of medical malpractice.
CAVANAGH and KELLY, JJ., joined in section III(C) and concurred in the result only with regard to section 111(B).
WEAVER, J., joined in sections III(B) and III(C).

 255 Mich App 339, 352-354; 660 NW2d 361 (2003).

 Because Adams died during the pendency of this case, his wife, Katherine Adams, was appointed as the personal representative of his estate and substituted as a party.

 See, also, MCL 600.2959, which provides:
In an action based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death, the court shall reduce the damages by the percentage of comparative fault of the person upon whose injury or death the damages are based....

 Moreover, MCL 600.6304(6) expressly acknowledges that a plaintiff may be determined “to have fault” in “a medical malpractice claim ....”

 See, also, Skinner v Square D Co, 445 Mich 153, 162-163; 516 NW2d 475 (1994), and M Civ JI 15.01 which provides the following definition of proximate cause:
When I use the words “proximate cause” I mean first, that the negligent conduct must have been a cause of plaintiffs injury, and second, that the plaintiffs injury must have been a natural and probable result of the negligent conduct.

 Because damage cannot arise on its own, but must flow from an injury, we disagree with Justice Cavanagh’S assertion in his concurrence/dissent that the majority “subverts the text of MCL 600.6304” by focusing on “plaintiffs injury” rather than “plaintiffs damage.” Post at 598. Damage can only be the result of an injury. That is, first an injury to plaintiff must exist and the trier of fact must then determine whether plaintiff constituted a proximate cause of such injury before there is any need for the trier of fact to focus on plaintiffs damages. Thus, we believe we are correct when we state at p 552 that § 6304 applies where plaintiffs pre-treatment negligence constituted a proximate cause of her “injury and subsequent damage . ...”

 In her opinion, Justice Weaver criticizes the majority because it “does not offer any analysis regarding why it is appropriate to consider plaintiffs pretreatment negligence as a proximate cause of her death, but simply states that it may be considered.” Post at 603. However, on pp 551-552, we analyze the language of § 6304 in support of this holding. Such language is the only reason why it is “appropriate” to consider pretreatment negligence.

 In her opinion, Justice Weaver asserts that “all the other state courts that have considered the question whether a patient’s own pretreatment *553 negligence could be considered a proximate cause of the patient’s damages for purposes of comparative negligence have ultimately decided that it should not.” Post at 603. We simply note the obvious, to wit, no other state was interpreting the specific language of Michigan law, MCL 600.6304. See also Wyatt v United States, 939 F Supp 1402, 1412 (ED Mo, 1996) (holding that under Missouri law, Mo Rev Stat 538.230, which requires the trier of fact “[i]n any action against a health care provider for damages for personal injury or death on account of the rendering of or failure to render health care services” to “apportion fault among... parties,” it was proper for the trial court to reduce the plaintiffs medical malpractice damages in accord with the plaintiffs own negligence that “substantially contributed to initially cause” the reason for which the plaintiff sought medical treatment).

 It is possible to hypothesize situations where a plaintiffs pretreatment negligence will do nothing more than create the condition leading the plaintiff to seek treatment. In such a situation, the negligent practitioner might be found to constitute a superseding cause that produced an injury different in kind. For example, if a person negligently broke her leg and during surgery to set the leg the doctor cut an artery causing her to bleed to death, the decedent’s original negligence could be said to have done no more than bring the plaintiff to the operating table. *554 But, if the surgeon merely set the broken leg negligently, such an injury would constitute a natural and foreseeable result of the plaintiffs original negligence.

 One of defendants’ experts, Dr. Bradford Walters, testified as follows:
Q. Does Mrs. Shinholster have a duty to take her medication as prescribed?
A. She does.
Q. I want you to assume for this next question that as of April 7, 1995 and continuing through April 16th, 1995 when Mrs. Shinholster went into the hospital, I want you to assume that she did not take her Procardia as prescribed.
A. So assumed.
Q. I want you to assume she maintained her normal habit and routine regarding that, and she only took it when she didn’t feel weU[J
A. I will assume that.
Q. Assuming that to be true, do you have an opinion based upon a reasonable degree of medical certainty that Mrs. Shinholster’s failure to take the Procardia as prescribed from April 7 through April 16, 1995 was a proximate cause of her stroke and ultimate death?
*555 A I think it was one of the reasons, yes. It was a proximate cause.
Q. Why would her failure to take her medication as prescribed be a proximate cause of her stroke and death?
A. One of the worst things that can happen to a patient who has high blood pressure is to take their medication intermittently. The blood pressure comes down. The medication wears off. The blood pressure soars up. The blood pressure comes down. If and when they take it again, it’s sort [oí] like a hammer hit to the brain each time that happens.
When blood pressure medications are taken on a regular basis there’s a much smoother lowering of blood pressure and you don’t get those spikes up and down and up and down.
Those spike[s] up and down can possibly cause what happened to Mrs. Shinholster and a stroke like this ....
Q. So one of the things you have [a] problem with Betty Shinholster is she must not have been taking her meds as prescribed. Is that what you believe?
A. That’s what I believe.
Q. Do you believe that caused her death?
A I believe it was one of several factors. Whether I can say it is the cause, the ultimate cause, would be nice for black and white purposes. But nothing is quite that black and white. But I think it was one part of a jig saw puzzle, and that was definitely one piece.
Q. Let me ask you this, sir: If she had taken her blood pressure medication exactly as the doctor told her to do you believe she would he alive?
A. I think there was a good chance that she may have been.

 While a remand for a determination of damages only is generally disfavored by this Court, see Garrigan v LaSalle Coca-Cola Bottling Co, 373 Mich 485, 489; 129 NW2d 897 (1964), such remand is proper “when liability is clear.” Burns v Detroit, 468 Mich 881; 658 NW2d 468 (2003), citing Bias v Ausbury, 369 Mich 378, 383; 120 NW2d 233 (1963). See, also, Peisner v Detroit Free Press, Inc, 421 Mich 125, 129; 364 NW2d 600 (1984); Smith v Chippewa Co Bd of Co Rd Comm’rs, 381 Mich 363, 381; 161 NW2d 561 (1968). Here, neither at trial nor on appeal have defendants argued that plaintiffs pre-treatment negligence affected the proper standard of care defendants owed to plaintiff. Defendants have only sought to admit evidence of plaintiff’s pre-treatment negligence in an effort to offset the extent of their liability. That is, while defendants acknowledge that they have breached the appropriate standard of care, and, thus, are liable to some extent for plaintiff’s injuries because they were “a” proximate cause of such injuries, they also assert that plaintiff’s pre-treatment negligence also was “a” proximate cause of plaintiffs injuries and, thus, have requested that such negligence be considered by the jury in determining which party is responsible for what percentage of proximate causation. Accordingly, given the particular facts and circumstances of this case, I would remand for damages only.

 In response to Chief Justice CORRIGAN’S assertion in her concurrence/dissent that “defendants have preserved the argument that a new trial on all issues is required because the proximate cause issue affects liability,” post at 586 n 2, I note that in the quoted portion of defendants’ brief, defendants only contend that, had plaintiffs pretreatment negligence been considered by the jury, it may have found that “such negligence was a proximate cause of the fatal stroke” (emphasis added). That is, defendants never contend that they are not liable because, had plaintiffs pre-treatment negligence been considered by the *558 jury, it would have determined that they were not a proximate cause of plaintiffs injury, but they contend only that, had the jury been able to consider such negligence, the extent of their own liability would have been reduced.
Further, I find the citations of MCL 600.2959 and M Civ JI 11.01 unpersuasive in support of such position. Post at 588-589. Both the statute and the jury instruction expressly address comparative fault, which generally comes into play only during the damages phase of trial, after the jury has determined that a plaintiff has proven her prima facie tort case. While, as the Chief Justice correctly asserts, evidence may be presented throughout trial regarding a plaintiffs comparative fault, post at 589, such evidence generally does not affect whether a defendant was liable at all for a plaintiffs injury, but rather the extent of his liability. Where such evidence is sufficiently intertwined with liability, however, there is absolutely no barrier to the appellate court remanding for an entirely new trial. Because defendants themselves, unlike the concurrence/dissent, have never argued that, “had the jury been permitted to consider plaintiffs pre-treatment negligence, it would not have found that defendants breached their standard of care or that defendants’ breach was a proximate cause of plaintiffs injury,” I continue to believe that a remand for damages only is warranted under the circumstances of this case.

 A majority of this Court favors remanding this case to the trial court, but there is no majority in favor of any specific type of remand. Three justices favor remanding this case for an entirely new trial, one justice favors remanding this case for a determination of damages only, and three justices favor no form of remand at all. It is regrettable that no further guidance can he offered to the trial court.

 I am concerned that, if this Court were to accept Chief Justice Corrigan’S assertion that this case he remanded for an entirely new trial, we would be required to remand for an entirely new trial in virtually all cases in which not every single aspect of a plaintiffs pre-treatment negligence was fully considered at trial. For instance, assume a case in which a defendant-doctor is found to be liable in a medical malpractice action in which he has breached the appropriate standard of care and has been determined to have been a proximate cause of the plaintiffs injury and subsequent damages. The trial judge has allowed the defendant to present evidence regarding the plaintiffs own alleged negligence and the jury accordingly has found the plaintiff to be ten percent liable for the damages and the doctor to be ninety percent hable. However, the defendant wanted evidence admitted at trial of one additional, albeit slight, instance of the plaintiffs own negligence that the trial judge ruled inadmissible. The defendant believes that, had this evidence been admitted, the jury would have found the plaintiff to have been twelve percent hable rather than ten percent and, thus, the defendant to have been eighty-eight percent rather than ninety percent hable. If an appehate court finds that the trial judge erred in ruling the additional evidence of the plaintiffs neghgence inadmissible, should a remand for an entirely new trial be required? In my judgment, it makes considerable sense, and represents a far more prudent use of judicial resources to remand for a redetermination of damages only in such a case, which would allow the defendant to present the additional evidence and the jury to determine whether the plaintiffs percentage of liability should be increased, and the defendant’s percentage of liability decreased, accordingly. Nothing, of course, would prohibit an appehate court from remanding for an entirely new trial in subsequent cases if the facts require.

 Thus, for example, assume that a jury renders a $500,000 verdict at 5 P.M. on a Monday in favor of an injured party who, at the time of such verdict, was alive and clearly satisfied one of the enumerated higher cap injuries of § 1483. However, later that evening, the injured party dies. The next morning at 9 A.M., the trial court, expecting to grant damages pursuant to the higher tier, prepares to enter his post-verdict determination as required by § 6304. He is informed, however, that the injured party has died the prior evening. In accordance with the Chief Justice’s understanding, the judge would now be required to award the decedent’s survivors damages pursuant to the lower tier.

 In asserting that, because the “death exception was eliminated when the statute was amended in 1993 to its current form,” this shows “that the Legislature intended to exclude death from the exceptions giving rise to application of the higher cap,” post at 592, we believe that the Chief Justice accords unmerited weight to the elimination of the “death exception” in interpreting the current version of § 1483. The 1986 version of § 1483 provided, in relevant part:
(1) In an action for damages alleging medical malpractice against a person or party specified in section 5838a, damages for noneconomic loss which exceeds $225,000.00 shall not be awarded unless 1 or more of the following circumstances exist:
(a) There has been a death.
Thus, under the former § 1483, which had a single-tiered system of noneconomic damages cap, if a death occurred, there was no cap on damages. However, the current § 1483 contains a too-tiered system of noneconomic damages cap, and no longer contains a “death exception.” By. eliminating the “death exception,” we believe the Legislature intended nothing more than that one of the statute’s two caps apply to limit noneconomic damages in every medical malpractice action, including those filed under the wrongful death act. We are unclear about the rationale relied upon by the Chief Justice in assuming that, because the Legislature eliminated death as an outright exception to the application of any cap, that it must have intended that death always fall under the lower cap. We see no rationale for assuming such a conclusion from the Legislature’s actions.

 We note that defendants’ and the Chief Justice’s positions, taken to their inevitable conclusions, might just as well require that, if the injured *564 party is deceased at the time of judgment, the higher cap tier would always apply. This is because: (1) a deceased person always “has permanently impaired cognitive capacity rendering him or her incapable of making independent, responsible life decisions and permanently incapable of independently performing the activities of normal, daily living”; and (2) if the injured person is deceased, “[tjhere has [always] been permanent loss of or damage to a reproductive organ resulting in the inability to procreate.”

 Absent specific language in § 1483 stating otherwise, and in light of the textual evidence set forth in this section, we are simply not persuaded that, whether the higher tier applies is to be viewed as a function of wholly arbitrary facts and circumstances concerning the specific time at which final judgment is rendered, such as the nature and congestion of the trial court’s docket, the existence of scheduling conflicts of the parties and their attorneys, or the sheer length of a trial. Nor can it reasonably be dispositive of whether the higher tier applies that a plaintiff has died shortly before or after the end of trial, or shortly before or after the post-verdict damages and cap determinations. See n 15. Nor do we understand why delaying tactics in the justice process should be incentivized in the perverse expectation that a plaintiff may not survive trial and judgment.

 Section 6306 provides, in part:
(1) After a verdict rendered by a trier of fact in favor of a plaintiff, an order of judgment shall be entered by the court... in the following judgment amounts:
(c) All future economic damages, less medical and other health care costs, and less collateral source payments determined to be collectible under section 6303(5) reduced to gross present cash value.
(d) All future medical and other health care costs reduced to gross present cash value.
(e) All future noneconomic damages reduced to gross present cash value.

 Further, no section in Chapter 63 of the Revised Judicature Act uses the term “plaintiff” in reference to the personal representative or the decedent’s estate.

 At death, a deceased no longer continues to age, and by that same token, we hold that, at death, a deceased does not surrender her age or become without an age, hut rather, reasonably, for purposes of § 6311, retains her age.