# STATE OF MICHIGAN

# COURT OF APPEALS

LAMIS H. ELAHHAM,

        Plaintiff-Appellee/Cross-Appellant,

v

MOHAMAD B. AL-JABBAN,

        Defendant-Appellant/Cross-
        Appellee.

FOR PUBLICATION
March 9, 2017
9:00 a.m.

No. 326775
Genesee Circuit Court
LC No. 13-306977-DM

LAMIS H. ELAHHAM,

        Plaintiff-Appellee,

v

MOHAMAD B. AL-JABBAN,

        Defendant-Appellant.

No. 331438
Genesee Circuit Court
LC No. 13-306977-DM

Before: HOEKSTRA, P.J., and JANSEN and SAAD, JJ.

PER CURIAM.

In Docket No. 326775, defendant appeals as of right the first amendments to the contested judgment of divorce. Defendant challenges the trial court's decisions regarding attorney fees and property division. Plaintiff filed a cross-appeal, challenging the trial court's decisions on child custody, spousal support, property division, and discovery sanctions. In Docket No. 331438, defendant appeals by delayed leave granted[1] the order finding insufficient information that plaintiff remarried and denying defendant's motion to modify the spousal support award. We affirm in both appeals.

---

[1] See *Elahham v Al-Jabban*, unpublished order of the Court of Appeals, entered July 21, 2016 (Docket No. 331438).

This case arises from a complaint of divorce filed in 2013. The parties were married in Syria in 1989. Defendant is a physician with his own medical practice. Plaintiff obtained her pharmacy degree in Syria, but was not licensed as a pharmacist in Michigan at any relevant time. Plaintiff was a stay-at-home mother for most of the parties' marriage, but worked part-time as a teacher and a pharmacy intern at various times during the marriage. The parties had four adult sons and one minor child at the time of trial.

In late 2012, plaintiff left the marital home in Grand Blanc, Michigan, and moved into the parties' apartment in Egypt. Plaintiff took the parties' minor child with her. She then filed for divorce in January 2013. The trial court held a bench trial and signed a contested judgment of divorce on December 1, 2014. The court addressed several issues in the judgment of divorce, including child custody, child support, spousal support, and property division. The court also awarded attorney fees to plaintiff. The court entered an amended judgement of divorce on March 20, 2015. Several months after the entry of the judgment of divorce, defendant filed a motion to modify spousal support on the basis that plaintiff remarried. The trial court held a hearing on the motion on July 2, 2015, and, after hearing testimony from experts for both parties, determined that there was insufficient evidence that plaintiff remarried.

## I. ATTORNEY FEES

In Docket No. 326775, defendant first argues that the trial court abused its discretion by awarding attorney fees to plaintiff. We conclude that defendant waived the issue by agreeing to pay plaintiff's attorney fees at the outset of the case.

A waiver constitutes an "intentional relinquishment of a known right." *Reed Estate v Reed*, 293 Mich App 168, 176; 810 NW2d 284 (2011) (citation and quotation marks omitted). A waiver is shown through express declarations or declarations manifesting a party's purpose and intent. *Id*. During a March 4, 2013 pretrial hearing, defense counsel told the court, "There isn't anybody to pay [plaintiff's] legal fees except my client. *So, she is going to be taken care of on legal fees*." (Emphasis added.) Defense counsel objected to "any huge legal fees ordered now," but also stated that plaintiff's attorney will "be well compensated for if not on a voluntarily [sic] basis, certainly the Court would order my client to provide her with legal fees." On appeal, defendant does not challenge the reasonableness of the attorney fee award. Instead, defendant contends that the trial court abused its discretion by requiring him to pay attorney fees without finding that he had the ability to pay or that he violated a court order. We conclude that defendant waived the issue by agreeing at the outset of the case to pay plaintiff's attorney fees. Therefore, we decline to address the issue whether the trial court abused its discretion by granting attorney fees to plaintiff.

## II. PROPERTY DISTRIBUTION

Defendant argues that the trial court inequitably divided the marital property by ordering the sale of one of the commercial properties owned by the parties. We disagree. On cross-appeal, plaintiff argues that the trial court's property division was inequitable because plaintiff received significantly fewer assets than defendant. We disagree.

The parties presented ample testimony at trial regarding the marital assets. In addition to the marital home located in Grand Blanc, Michigan, the parties owned an apartment in Cairo, Egypt. Both parties owned a 1/7 interest in a lake house in Fenton, Michigan. Defendant also owned property in Syria. Defendant owned his medical practice, and he was the sole member of an LLC that owned an office building referred to as the Saginaw Street property. Plaintiff and defendant were the only two members of an LLC that owned another office building referred to as the Richfield Road property. Defendant operated his medical practice out of suites in both the Saginaw Street and Richfield Road properties.

The court awarded defendant the Grand Blanc home and his 1/7 interest in the Fenton lake house. In addition, defendant was awarded his medical practice and the property in Syria. Plaintiff was awarded the apartment in Egypt and her 1/7 interest in the Fenton property. With regard to the office buildings, the court ordered the sale of the Richfield Road property and ordered that the proceeds from the sale be divided between plaintiff and defendant. With regard to the Saginaw Street property, the court ordered that defendant receive the suite out of which he operated his medical practice, and plaintiff receive another suite in the building. The Saginaw Street property contained a final unit called unit C, which defendant sold during the pendency of the divorce case. The court ordered that the parties would divide the down payment and monthly payments from the sale of the Saginaw Street unit.

In general, an issue is preserved if it was raised in, and addressed and decided by, the trial court. *Mouzon v Achievable Visions*, 308 Mich App 415, 419; 864 NW2d 606 (2014). Defendant raised the issue of the division of the Richfield Road and Saginaw Street properties in his proposed findings of fact and conclusions of law, in which he proposed that plaintiff receive two of the Richfield Road units, while he receive the Richfield Road suite out of which he conducted his medical practice and the two remaining units of the Saginaw Street property. Plaintiff raised the issue of defendant's dissipation of marital assets in her proposed findings of fact and conclusions of law, in which she outlined the alleged dissipation of assets and recommended that the court assign the amount of the dissipation to defendant.

The trial court addressed and decided the issue raised by defendant in its judgment of divorce and corresponding opinion when it ordered the sale of the Richfield Road property and divided units A and B of the Saginaw Street property between plaintiff and defendant. Therefore, the issue is preserved. The court also addressed and decided the broader issue of the division of the marital estate, as well as the issue of how to divide the proceeds from the sale of the Saginaw Street unit, in the judgment of divorce. However, the trial court did not directly address and decide the dissipation issue raised by plaintiff. Therefore, this issue is unpreserved.

> Although this Court need not address an unpreserved issue, it may overlook preservation requirements when the failure to consider an issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented. [*Gen Motors Corp v Dep't of Treasury*, 290 Mich App 355, 387; 803 NW2d 698 (2010).]

Although the trial court did not directly address or decide the issue of defendant's dissipation of marital assets in the context of the property division, we will overlook the preservation

-3-

requirements because our failure to consider the issue could result in a manifest injustice to plaintiff if she were correct that the court failed to consider defendant's purposeful dissipation of marital assets. In addition, we believe that consideration of the issue is necessary for a proper determination of the broader property division issue. Therefore, we will address plaintiff's argument regarding whether the trial court failed to consider defendant's dissipation of marital assets.

We review for clear error the trial court's findings of fact. *Richards v Richards*, 310 Mich App 683, 693; 874 NW2d 704 (2015). " 'A finding is clearly erroneous if we are left with a definite and firm conviction that a mistake has been made.' " *Id.* at 690 (citation omitted). " 'If the findings of fact are upheld, [we] must decide whether the dispositive ruling was fair and equitable in light of those facts.' " *Id.* at 693 (citation omitted; alteration in original). We will uphold the trial court's ruling "unless this Court is 'left with the firm conviction that the division was inequitable.' " *Id.* at 694 (citation omitted). With regard to the dissipation issue, because the issue was not preserved for appellate review, our review is limited to plain error. See *Duray Dev, LLC v Perrin*, 288 Mich App 143, 150; 792 NW2d 749 (2010). "Plain error occurs at the trial court level if (1) an error occurred (2) that was clear or obvious and (3) prejudiced the party, meaning it affected the outcome of the lower court proceedings." *Id.*

The overarching goal of the trial court's property distribution in a divorce action is equity. *Richards*, 310 Mich App at 694. "Although marital property need not be divided equally, it must be divided equitably in light of a court's evaluation of the parties' contributions, faults and needs." *Id.*

> [T]he following factors are to be considered wherever they are relevant to the circumstances of the particular case: (1) duration of the marriage, (2) contributions of the parties to the marital estate, (3) age of the parties, (4) health of the parties, (5) life status of the parties, (6) necessities and circumstances of the parties, (7) earning abilities of the parties, (8) past relations and conduct of the parties, and (9) general principles of equity. There may even be additional factors that are relevant to a particular case. For example, the court may choose to consider the interruption of the personal career or education of either party. The determination of relevant factors will vary depending on the facts and circumstances of the case. [*Id.* (citation and quotation marks omitted).]

The court must consider all relevant factors, but cannot " 'assign disproportionate weight to any one circumstance.' " *Id.* (citation omitted).

Defendant acknowledges that the monetary value of the commercial property that each party received was equal. However, defendant contends that the trial court's decision to sell one of the buildings out of which he conducted his medical practice caused him to suffer an extreme financial hardship because he was forced to relocate his medical practice. Defendant's argument that he suffered extreme financial hardship is specious because the record indicates that defendant had sufficient assets to relocate his medical practice.

Defendant received one unit of the Saginaw Street property, half the proceeds from the sale of Saginaw Street unit C, and half the proceeds from the sale of the Richfield Road property.

In addition, the trial court awarded defendant the following assets: the $830,000 marital home, with an equity value of $240,000, a 1/7 interest in a $285,000 Fenton lake house, the unvalued property in Syria, defendant's medical practice, valued at $177,604, and 45% of defendant's retirement account, which had a value between $753,009 and $800,000. Experts Robert Looby and John Haag valued defendant's reasonable physician compensation at $283,318. Defendant's income tax returns reflect that he made between approximately $385,000 and $500,000 in the five years preceding the divorce action. Therefore, defendant had the means to rent or purchase a replacement office based on the property received in the judgment of divorce and defendant's income. Furthermore, the trial court stated in its opinion and order, "[t]he receiver shall have the discretion to determine any rents to be paid by the HUSBAND to operate his medical office, beginning January 1, 2015," which indicates that defendant could have remained in the Richfield Road location by paying rent. Therefore, defendant's argument that the trial court inequitably divided the commercial properties is without merit.

On cross-appeal, plaintiff contends that the trial court inequitably divided the marital estate and improperly ignored defendant's dissipation of marital assets. Plaintiff contends that the trial court failed to consider and weigh the relevant property division factors discussed above when it divided the marital property. However, we conclude that plaintiff's argument is without merit because the trial court *did* consider the relevant factors in its opinion and order corresponding with the judgement of divorce. Before ordering the division of marital assets, the court acknowledged that it weighed the relevant factors. The court explained that defendant was paying the tuition and costs for his older sons to attend college, was paying spousal support to plaintiff, and was responsible for the financial support of the minor child. On the other hand, the court recognized that plaintiff received an equitable property award, which included 55% of defendant's IRA account, plaintiff had an apartment in Egypt and a place to stay in Michigan, plaintiff had the necessary skills to secure employment, and defendant would pay plaintiff's attorney fees. In its order signed on March 19, 2015, the court clarified that it analyzed several factors in its previous decision and that the most relevant factors included the present situation of the parties, the needs of the parties, general principles of equity, the earning ability of the parties, and the duration of the marriage. Therefore, the trial court properly considered relevant factors in dividing the marital estate.

Plaintiff further contends that she was awarded major assets worth $143,000, while defendant was awarded major assets worth $359,274. Plaintiff refers to the trial court's decision to award her the apartment in Cairo, Egypt, which had a value of $143,000. However, plaintiff overlooks several additional awards in the judgment of divorce. In addition to the Cairo apartment, plaintiff was awarded a 1/7 interest in the $285,000 Fenton property, one unit of the Saginaw Street property, half of the proceeds from the sale of the Richfield Road property, half the proceeds from the sale of the Saginaw Street unit C, jewelry worth at least $25,000, a Lexus with an equity value of $13,000, and 55% of defendant's IRA, with a value between $753,009 and $800,000. Therefore, plaintiff's argument that she received assets worth only $143,000 is without merit.

Plaintiff further contends that the trial court failed to consider defendant's dissipation of marital assets from his medical practice, which she argues included his repayment of a $60,000 shareholder loan, $128,080 in distributions, and $20,503 in automobile expenses. Plaintiff fails to establish that these amounts stemmed from defendant's dissipation of marital assets, rather

-5-

than from defendant's ordinary business expenses and income. With regard to the distributions from the medical practice, the evidence in the record indicates that this amount was considered as part of defendant's income for the purposes of determining the marital property division. With regard to the automobile expenses, plaintiff fails to show that these expenses fell outside the range of normal business expenses for defendant's medical practice. Furthermore, with regard to the loan repayment, plaintiff fails to show that the repayment constituted dissipation of marital assets. The result of a loan repayment would be an increase in the equity of the medical practice, which would be factored into defendant's property award.

Finally, plaintiff contends that the trial court improperly handled defendant's sale of one of the units of the Saginaw Street property during the pendency of the case. Before trial, the trial court entered an order prohibiting the dissipation of marital assets during the divorce action. Defendant sold one unit of the Saginaw Street property during the divorce action in violation of the court order. Plaintiff challenges the trial court's decision with regard to the distribution of the profits from the sale. She contends that the trial court ordered that half the down payment and all the monthly payments be placed in defense counsel's client trust account, but then failed to order that plaintiff receive half of these amounts. The record indicates that the court evenly divided the proceeds from the sale in the judgment of divorce. The court stated in its opinion and order, "As to the unit which was sold (Condo C) the parties shall evenly divide the down payment and any past and future monthly payments." Therefore, the court properly awarded half the down payment and half the monthly payments to plaintiff.

### III. CHILD CUSTODY

Plaintiff argues on cross-appeal that the trial court erred when it concluded that it could not grant physical custody of the minor child to plaintiff while plaintiff lived in Egypt. We disagree.

"A custody order 'shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue.' " *Butler v Simmons-Butler*, 308 Mich App 195, 200; 863 NW2d 677 (2014), quoting MCL 722.28. We will affirm the trial court's factual decisions under the great weight standard "unless the evidence clearly preponderates in the other direction." *Id*. We defer to the trial court's determinations regarding credibility when reviewing the trial court's findings. *Id*. In addition, we review the trial court's discretionary ruling regarding which party is granted custody for an abuse of discretion. "An abuse of discretion, for purposes of a child custody determination, exists when the result is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias." *Id*. at 201. "Questions of law are reviewed for clear legal error. A trial court commits legal error when it incorrectly chooses, interprets or applies the law." *Id*. We review de novo questions of statutory interpretation. *Rogers v Wcisel*, 312 Mich App 79, 86; 877 NW2d 169 (2015). Finally, we review de novo a trial court's decision to grant or deny a motion for a directed verdict and view the evidence in the light most favorable to the nonmovant. *Wiley v Henry Ford Cottage Hosp*, 257 Mich App 488, 491; 668 NW2d 402 (2003).

During trial, defendant moved for a directed verdict on the issue whether the court could grant physical custody of the minor child to plaintiff while plaintiff lived in Egypt. Defendant

contended that the trial court could not grant physical custody of the minor child in Egypt because Egypt was not a party to the Hague Convention on the Civil Aspects of International Child Abduction (the Hague Convention). Defendant further explained that if plaintiff decided not to return the minor child to the United States in order to have parenting time with defendant, the trial court could not enforce the parenting time order. The trial court agreed with defendant's analysis and granted sole physical custody to defendant.

The issue raised on appeal requires us to interpret the phrase "parenting time" in MCL 722.27a(10). "The goal of statutory interpretation is to give effect to the Legislature's intent." *Rogers*, 312 Mich App at 86. "If a statute's language is clear, this Court assumes that the Legislature intended its plain meaning and enforces it accordingly." *Id*. In general, words and phrases in a statute should be given their primary and generally understood meaning. *Id*. at 87. " '[E]very word should be given meaning, and we should avoid a construction that would render any part of the statute surplusage or nugatory.' " *Id*. at 86-87 (citation omitted). "Statutory language should be construed reasonably, keeping in mind the purpose of the act, and to avoid absurd results." *Id*. at 87.

The statute at issue, MCL 722.27a(10),[2] provides:

> Except as provided in this subsection, a parenting time order shall contain a prohibition on exercising parenting time in a country that is not a party to the Hague Convention on the Civil Aspects of International Child Abduction. This subsection does not apply if both parents provide the court with written consent to allow a parent to exercise parenting time in a country that is not a party to the Hague Convention on the Civil Aspects of International Child Abduction.

The plain language of the statute establishes that a court cannot grant physical custody to a parent when that parent lives in a country that is not a party to the Hague Convention. The parties do not dispute that plaintiff intended to live in Egypt and that defendant did not agree to the exercise of parenting time in Egypt. Thus, the sole issue is whether the trial court correctly determined that it could not grant plaintiff physical custody of the minor child in Egypt because plaintiff was precluded from exercising parenting time in a country that is not a party to the Hague Convention. The trial court correctly concluded that MCL 722.27a(10) precludes the award of physical custody in a country that is not a party to the Hague Convention. As noted by the trial court, each parent exercises parenting time with the child when the parent spends time with the child, regardless of which party has physical custody of the child. The statute does not state that the prohibition only applies to the noncustodial parent. Therefore, the trial court correctly concluded that it could not award physical custody of the minor child to plaintiff because the statute precludes the court from granting parenting time in a country that is not a party to the Hague Convention, unless the other parent agrees in writing.

---

[2] At the time of the trial court's decision, MCL 722.27a(10) was codified as MCL 722.27a(9). MCL 722.27a(9), as amended by 2015 PA 50.

We also note that our interpretation of the statute avoids an absurd result. Plaintiff's interpretation of the statute would permit a parent with physical custody of a child to take the child to a country that is not a party to the Hague Convention. The concern for international child abduction applies equally to the custodial parent and the noncustodial parent. As proposed by the trial court in its opinion accompanying the judgment of divorce, "If this court granted 'custody' to the WIFE and she did not provide the HUSBAND to have court ordered parenting time in Michigan, where would he go for relief?" Thus, plaintiff's interpretation would lead to the absurd result that the custodial parent could take the child to a nonparty country despite any risk of parental kidnapping. We read the statute to avoid this absurd result. Accordingly, the trial court properly determined that it could not grant physical custody of the minor child to plaintiff while plaintiff resided in Egypt.

## IV. SPOUSAL SUPPORT

Plaintiff next argues on cross-appeal that the trial court abused its discretion by modifying its initial spousal support award. We disagree.

"Whether to award spousal support is in the trial court's discretion, and the 'trial court's decision regarding spousal support must be affirmed unless we are firmly convinced that it was inequitable.' " *Richards*, 310 Mich App at 690 (citation omitted). We review for clear error the trial court's findings of fact. *Id*.

A trial court awards spousal support in order to balance the needs and incomes of the parties so that neither party is impoverished, and the trial court awards spousal support based on what is just and reasonable under the circumstances of the case. *Richards*, 310 Mich App at 691. MCL 552.13(1) provides, in part:

> In every action brought, either for a divorce or for a separation, the court may require either party to pay alimony for the suitable maintenance of the adverse party, to pay such sums as shall be deemed proper and necessary to conserve any real or personal property owned by the parties or either of them, and to pay any sums necessary to enable the adverse party to carry on or defend the action, during its pendency.

The trial court should weigh the following factors in deciding whether to award spousal support:

> (1) the past relations and conduct of the parties, (2) the length of the marriage, (3) the abilities of the parties to work, (4) the source and amount of property awarded to the parties, (5) the parties' ages, (6) the abilities of the parties to pay alimony, (7) the present situation of the parties, (8) the needs of the parties, (9) the parties' health, (10) the prior standard of living of the parties and whether either is responsible for the support of others, (11) contributions of the parties to the joint estate, (12) a party's fault in causing the divorce, (13) the effect of cohabitation on a party's financial status, and (14) general principles of equity. [*Richards*, 310 Mich App at 691 (citation and quotation marks omitted).]

"To modify a spousal support award, the moving party must show that there has been a change of circumstances since the judgment of divorce." *Loutts v Loutts (After Remand)*, 309

Mich App 203, 213; 871 NW2d 298 (2015). In addition, MCL 552.28 addresses the amendment of spousal support and provides:

> On petition of either party, after a judgment for alimony or other allowance for either party or a child, or after a judgment for the appointment of trustees to receive and hold property for the use of either party or a child, and subject to [MCL 552.17], the court may revise and alter the judgment, respecting the amount or payment of the alimony or allowance, and also respecting the appropriation and payment of the principal and income of the property held in trust, and may make any judgment respecting any of the matters that the court might have made in the original action.

MCL 552.13(2) specifically addresses remarriage and provides, in relevant part, "An award of alimony may be terminated by the court as of the date the party receiving alimony remarries unless a contrary agreement is specifically stated in the judgment of divorce." In addition, this Court has noted that "[o]nce a trial court provides for spousal support, it has continuing jurisdiction to modify such an order, even without 'triggering language' in the judgment of divorce." *Richards*, 310 Mich App at 693.

In the judgment of divorce, the court ordered that defendant pay $4,583.33 in monthly spousal support for 55 months, starting on June 1, 2014, and terminating on December 1, 2018. The court stated that after December 1, 2018, "the issue is preserved." The court also ordered that spousal support "shall terminate only on the death of either party or further order of the court." However, the court also stated, "The court reserves the right to amend or modify the ruling on spousal support based on a pending motion by HUSBAND that the WIFE has remarried and may be gainfully employed[.]"

On September 23, 2014, defendant filed a motion to terminate or modify his spousal support obligation. Defendant contended that plaintiff remarried and has stated that she is a pharmacist in Cairo. In the March 20, 2015 amended judgment of divorce, the trial court ordered, "Defendant's spousal support obligation to the Plaintiff shall terminate upon the death of the payee, December 31, 2018 or one (1) year after the remarriage of the Plaintiff, whichever occurs first." The court further stated, "Upon the remarriage of the Plaintiff her monthly spousal support shall be reduced 50% or one-half the present monthly amount."

The trial court did not abuse its discretion when it modified the spousal support award. The trial court retained the right to amend or modify the spousal support award in the judgment of divorce by stating that it reserved the right to modify or amend the support award on a pending motion that plaintiff has remarried and may be gainfully employed. Defendant filed such a motion on September 23, 2014, and the issue of plaintiff's remarriage was not resolved until after the July 2, 2015 hearing. Accordingly, based on the language in the judgment of divorce, the trial court reserved the right to modify the spousal support award under the circumstances. In addition, this Court recently clarified that the trial court has continuing jurisdiction to modify a spousal support order, even without "triggering language" in the judgment of divorce. *Richards*, 310 Mich App at 693. Thus, the trial court had the discretion to modify its initial spousal support award.

Furthermore, the amount of the initial and revised spousal support awards was equitable under the circumstances of the case. In the trial court's opinion and order accompanying the judgment of divorce, the trial court detailed its findings regarding its initial spousal support award. The court addressed the relevant factors. The court first addressed the past relations and conduct of the parties, noting that plaintiff was romantically involved with another man in Egypt, while defendant was living with another woman and may have remarried. The court also concluded that defendant was "financially controlling" over plaintiff.

With regard to the length of the marriage, the court found that the parties were married for 25 years, and plaintiff decided to initiate the divorce and relocate to Egypt. Regarding the parties' ability to work, the court concluded that defendant was an established medical doctor and the primary financial provider for the family. The court explained that plaintiff's ability to work was a complex issue. The court stated that plaintiff had worked as a teacher and pharmacy intern, and she had a professional pharmacy degree. The court further explained that plaintiff was available for work, but was not currently seeking employment despite having two years to update her educational skills.

With regard to the source and amount of property, the court noted that each party received approximately $900,000 in marital assets in the judgment of divorce. The court noted the present ages of the parties, with defendant being 53 and plaintiff being 47, and explained that defendant had the ability to pay spousal support. However, the court explained, "The court also must consider the support [defendant] is providing for the minor child and the tuition needs of the other four children, who rely upon him for financial support." With regard to the present situation of the parties, the court explained that defendant was solely responsible for supporting the parties' children, while plaintiff moved to Egypt, engaged in a relationship with another man, and was not working. With regard to the needs of the parties, the court explained that plaintiff was living in a fully-paid and fully-furnished apartment in Egypt, and she received a substantial property award. The court explained that the standard of living in Egypt was unclear, but plaintiff would likely need to find employment.

With regard to the health of the parties, the court explained that both parties appeared in good health. The court explained that the prior standard of living for the parties was an upper-class lifestyle. The court described the parties' homes and cars, and explained that plaintiff previously received $3,000 per month for her living expenses. The court further noted that defendant was responsible for nearly all the support of the children, while plaintiff was only responsible for herself. Finally, the court addressed the general principles of equity, noting that plaintiff was a stay-at-home mom during most of the parties' marriage and should not be required to dissipate her portion of the marital estate. The court also recognized that defendant was a good provider for the four children in college and gave generously to charity.

The trial court did not abuse its discretion with regard to its initial discussion of the relevant factors and the initial spousal support award. The court thoroughly discussed and weighed each relevant factor. Plaintiff contends that the trial court improperly considered defendant's support of the parties' four adult children. However, we conclude that the trial court properly considered defendant's support of the parties' adult children. Indeed, one of the relevant factors is whether one of the parties is responsible for the support of other individuals. See *Richards*, 310 Mich App at 691. Therefore, considering all of the factors discussed above,

the trial court's initial award of $4,583.33 per month was equitable and did not constitute an abuse of discretion.

Plaintiff further contends that the trial court inequitably modified the spousal support award. In its March 19, 2015 opinion and order, the court explained that while it could terminate plaintiff's spousal support altogether upon her remarriage, the court decided to terminate spousal support one year after plaintiff's remarriage and reduce the spousal support by ½ upon plaintiff's remarriage. The court explained, "This will allow Plaintiff additional time to complete licensing requirements to become a pharmacist. In addition[,] this will give Plaintiff additional monies to address her argument [that] she did not receive an equitable division of the property." The modified award is equitable considering the fact that plaintiff's remarriage would reduce her financial need for support payments, and the modified award would provide her with additional time to complete the requirements to become a pharmacist. Therefore, the trial court did not abuse its discretion by modifying the spousal support award on the basis of plaintiff's remarriage.

V. DISCOVERY SANCTIONS

Plaintiff next argues on cross-appeal that the trial court abused its discretion by failing to timely impose discovery sanctions on defendant and by awarding insufficient sanctions. We disagree.

We review the trial court's decision regarding whether to impose discovery sanctions for an abuse of discretion. *Traxler v Ford Motor Co*, 227 Mich App 276, 286; 576 NW2d 398 (1998). The record indicates that the trial court sanctioned defendant for his failure to comply with court orders and discovery requests. Plaintiff relies on MCR 2.302 and MCR 2.313 in support of her argument. MCR 2.302(E)(1) provides, in relevant part:

> A party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement the response to include information acquired later, except as follows:
>
> * * *
>
> (b) A party is under a duty seasonably to amend a prior response if the party obtains information on the basis of which the party knows that
>
> (*i*) the response was incorrect when made; or
>
> (*ii*) the response, though correct when made, is no longer true and the circumstances are such that a failure to amend the response is in substance a knowing concealment.

MCR 2.302(E)(2) permits the trial court to sanction a party pursuant to the sanctions outlined in MCR 2.313(B) for failing to supplement his or her discovery responses as required by MCR 2.302(E)(1). MCR 2.313(A)(5) governs the award of expenses in connection with a motion for an order compelling discovery and provides, in relevant part:

If the motion is granted, the court shall, after opportunity for hearing, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct, or both, to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney fees, unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust. [MCR 2.313(A)(5)(a).]

MCL 2.313(B)(2) provides, in relevant part:

If a party . . . fails to obey an order to provide or permit discovery, including an order entered under subrule (A) of this rule or under MCR 2.311, the court in which the action is pending may order such sanctions as are just, including, but not limited to the following:

* * *

In lieu of or in addition to the foregoing orders, the court shall require the party failing to obey the order or the attorney advising the party, or both, to pay the reasonable expenses, including attorney fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

The record is replete with motions to compel discovery. Plaintiff filed numerous motions in the trial court regarding defendant's failure to comply with discovery requests and trial court orders. The court entered numerous orders compelling discovery and requiring compliance with court orders. The court also addressed defendant's failure to comply with discovery requests in its opinion and order accompanying the judgment of divorce. The court noted that defendant did not cooperate with discovery requests, was not candid about the sale of the Saginaw Street unit, failed to update his answers to interrogatories, and was often late with support payments. The court ordered that defendant pay an additional attorney fee award of $3,000. Therefore, although the trial court did not order sanctions with regard to every allegation that defendant failed to comply with a court order or a discovery request, the trial court adequately addressed the issue by holding multiple hearings to determine defendant's compliance, entering several show cause orders, entering several orders requiring defendant to comply with discovery or a court order, and granting attorney fees with regard to defendant's noncompliance.

On appeal, plaintiff takes particular issue with the trial court's failure to order discovery sanctions relative to the sale of unit C of the Saginaw Street property. However, the trial court adequately addressed the issue of defendant's sale of the Saginaw Street unit. During an April 14, 2014 hearing, the court required that half of the down payment from the sale of the Saginaw Street unit be placed in defense counsel's trust account. The court also ordered the placement of the monthly payments of approximately $3,770 into defense counsel's trust account.

During a September 8, 2014 hearing, plaintiff's attorney raised the issue of defendant's failure to comply with the court's order. Defense counsel admitted that defendant was behind on the payments, but explained that defendant was not receiving monthly payments from the

purchaser of the property. Defense counsel indicated that defendant made arrangements with the purchaser of the property and that the issue should be resolved by the next week. Following the hearing, the court entered an order requiring that defendant pay the arrearage on the payments. The court stated that September 29, 2014, was the control date on which all obligations must be paid. Therefore, the trial court addressed the issue by requiring that defendant place the funds in the trust account by a certain date. Contrary to plaintiff's assertion on appeal, the record does not indicate a consistent failure to comply with the trial court's order following the September 8, 2014 hearing. Therefore, the trial court did not abuse its discretion by failing to impose additional sanctions.

## VI. PLAINTIFF'S REMARRIAGE

In Docket No. 331438, defendant first argues that the trial court erred by determining that there was insufficient evidence to establish that plaintiff remarried in Egypt. We disagree.

The issue regarding plaintiff's remarriage constitutes a mixed question of fact and law. The trial court's findings of fact are reviewed for clear error. See *Richards*, 310 Mich App at 690. The issue whether plaintiff remarried in Egypt presents a question of law, which we review de novo. See *Diez v Davey*, 307 Mich App 366, 376; 861 NW2d 323 (2014). As discussed, "[t]o modify a spousal support award, the moving party must show that there has been a change of circumstances since the judgment of divorce." *Loutts*, 309 Mich App at 213. In this case, the alleged change of circumstances was plaintiff's remarriage. "Michigan courts recognize marriages solemnized in foreign nations as a matter of comity." *Stankevich v Milliron (On Remand)*, 313 Mich App 233, 240 n 3; 882 NW2d 194 (2015). A Michigan court will recognize a marriage celebrated in a foreign country if the marriage is valid in the nation of celebration and the marriage is not contrary to public policy in Michigan. *Id*. "The rule in Michigan is that the validity of a foreign marriage must be determined by reference to the domestic relations law of the country of celebration." *Id*.

Plaintiff entered into a Katb el-Kitab (Kitab) with a man named Sharif Khashaba on June 11, 2014. According to defendant, the Kitab document constituted a marriage contract between plaintiff and Khashaba. The translation of the document indicates that it was "[a] claim for notarizing [a] marriage contract upon the requester's request and under her responsibility." The document indicates that a hearing was held on June 10, 2015. The purpose of the hearing was to notarize the marriage contract. The translation then goes on to state that the contract was authenticated, and the document is sealed with the seal of the "Abdeen Court."

On December 26, 2014, plaintiff was deposed and answered questions regarding her relationship with Khashaba. When asked if she was married, plaintiff explained, "I'm not married, I'm going to go back and marry. I have a Katb-Kitab." When asked about the Kitab, plaintiff testified, "It's like engagement, but it's not marriage. But it is engagement, but more – and you can search that in Islamic way." Plaintiff further expanded by stating, "It is not consider[ed] as marriage unless you have the legal part of it. But I can take my hijab off, he can come in and go, I can go with him." Plaintiff planned to get married in January 2015. She explained that after she was married in January 2015, she would receive a document and take the document to be registered in the Egyptian courts.

On July 2, 2015, the trial court held a hearing on the issue whether plaintiff had remarried. A copy of the Kitab was admitted into evidence at the hearing. Mohamed Elsharnoby, plaintiff's witness, testified that he is a licensed as an attorney in both Michigan and Egypt. Elsharnoby was licensed in Michigan in 2006, and was licensed in Egypt in 1992. He also lived in Egypt from 1970 to 2001. Elsharnoby testified that he maintains offices in both Egypt and Michigan at the time of the hearing.

Elsharnoby detailed the process of legalizing a marriage in Egypt. Elsharnoby explained that an individual has a marriage contract certified by filing a lawsuit asking for a declaration opinion that the marriage is valid, which may take a couple of years to obtain. He explained that the parties must take the declaration opinion and record it as a judgment with the city to prove a valid marriage. He explained that simply having the marriage contract is akin to a "boyfriend and girlfriend relationship," and explained, "Kitab is like engagement." He testified that the Kitab is "just a paper between two parties that would consent – that would consider themselves husband and wife, but it has nothing to do with the law." Elsharnoby explained that if the parties do not record the marriage, the wife will have no rights except the right to receive child support. However, once the parties formalize the marriage contract, the wife may receive spousal support, child support, and rights to the marital home before the children turn 18 years old.

Defendant's witness, Mohamad Algalaieni, testified that he is an Imam and has a Ph.D. in Sharia law. Algalaieni was born in Syria and admitted that he was unfamiliar with the traditions in Egypt. Algalaieni testified that the parties took the first step of entering into the marriage on June 11, 2014, and were religiously married on that day. However, he explained that the "real marriage" is delayed until after the marriage ceremony. He testified that an Egyptian judge recognized plaintiff's marriage on June 10, 2015. He explained that, in Syria, not everyone chooses to register a marriage contract with the court, but it is recommended that they do so.

Following the hearing, the court entered an order, in which it explained that although there was a strong argument that plaintiff was married under Sharia law, the court was not bound by the religious law in Egypt. The court explained that defendant did not produce evidence or testimony that the religious law of marriage was also the secular law of marriage in Egypt. The court credited the testimony of Elsharnoby and noted that there was no evidence that plaintiff recorded the marriage with the Egyptian government. The court, therefore, declined to find that plaintiff was remarried.

The trial court properly found that it lacked sufficient evidence that plaintiff was remarried at the time of the hearing. The trial court properly credited the testimony of Elsharnoby, who is licensed to practice law in both Michigan and Egypt. Algalaieni, on the other hand, is a religious official and does not have a license to practice law in either Michigan or Egypt. In addition, Algalaieni is Syrian and admitted that he is not familiar with the traditions in Egypt. Therefore, the trial court properly concluded that Elsharnoby's testimony was more credible than Algalaieni's testimony with regard to the secular law in Egypt.

Based on Elsharnoby's testimony, the steps to obtain a legally valid marriage in Egypt include (1) having the marriage contract certified by filing a lawsuit asking for a declaration opinion that the marriage is valid, and (2) recording the declaration opinion as a judgment. The trial court properly concluded that there was insufficient evidence that this process occurred

before the July 2, 2015 hearing. The Kitab reflects that plaintiff took the first step of filing a lawsuit seeking a declaration opinion that the marriage is valid. However, the Kitab does not indicate that the document was registered with any Egyptian city or certified by the government. Therefore, although it appears from the translation that an Egyptian court authenticated the marriage contract, the trial court properly determined that the document does not indicate that plaintiff took the final step of registering the document with the Egyptian government.

In addition, contrary to defendant's argument, the trial court did not apply the Michigan statutory requirements for a valid marriage to the facts of this case. Defendant points to the court's statement that it was not presented with legal authority regarding whether the Kitab was recognized as a valid and legal marriage "under Michigan law," as well as the court's statement that "this court is not bound by religious law, but by the laws of the State of Michigan." However, the trial court did not base its decision regarding the validity of the marriage on the domestic relations law of Michigan. Instead, the court concluded that it could not recognize the marriage pursuant to Michigan law regarding the recognition of foreign marriages because the court lacked evidence that the marriage was valid in Egypt. The trial court did not question the experts regarding the requirements for valid marriage in Michigan, and the court did not discuss the requirements for a valid marriage in Michigan in its order. Accordingly, the court applied the correct legal framework when it determined that there was insufficient evidence that plaintiff was remarried at the time of the hearing.

Lastly, defendant argues that the trial court abused its discretion by continuing the spousal support award in spite of plaintiff's career and the support of her new partner. As discussed, an issue is preserved if it was raised in, and addressed and decided by, the trial court. See *Mouzon*, 308 Mich App at 419. Defense counsel noted at the beginning of the July 2, 2015 hearing that the subject of the hearing was plaintiff's remarriage. He did not raise the issue whether spousal support should be modified because plaintiff was receiving adequate support from Khashaba or because plaintiff had the ability to work. The trial court did not address or decide the issue during the hearing or in its corresponding order, which was limited in scope to the issue whether plaintiff remarried. Therefore, the issue is not preserved for appellate review. Because the issue involves questions of fact that have not been raised in or decided by the trial court, we decline to address the issue. See *Gen Motors Corp*, 290 Mich App at 387.

Affirmed.


/s/ Joel P. Hoekstra
/s/ Kathleen Jansen
/s/ Henry William Saad

-15-