*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

EMPIRE IRON MINING PARTNERSHIP and
CLEVELAND-CLIFFS IRON COMPANY,

        Petitioners-Appellees,

v

TILDEN TOWNSHIP and TOWNSHIP OF
RICHMOND,

        Respondents-Appellants.

FOR PUBLICATION
June 17, 2021
9:05 a.m.

No. 353098
Tax Tribunal
LC No. 18-003877-TT

Before: JANSEN, P.J., and M. J. KELLY and RONAYNE KRAUSE, JJ.

PER CURIAM.

In this action regarding the construction and application of the tax on low grade iron ore, MCL 211.621 *et seq.*, respondents, Tilden Township and the Township of Richmond, appeal as of right the final judgment of Michigan Tax Tribunal in favor of petitioners, Empire Iron Mining Partnership and Cleveland-Cliffs Iron Company. On appeal, respondents contend that the Tribunal erred by concluding that petitioners' Empire Mine was not subject to the low grade iron ore tax (the iron ore tax). Alternatively, respondents argue that the Tribunal erred in dismissing the case before considering and allowing discovery regarding the issue of valuation of the property that was now subject to taxation under the General Property Tax Act (GPTA), MCL 211.1 *et seq.* For the reasons state in this opinion, we affirm.

## I. BASIC FACTS

The Empire Mine exists partially in both of respondents' townships. From its opening in 1963 until August 2016, low grade iron ore was mined on the property at an average of 5.5 million tons per year. During that period of time, the property on which the Empire Mine existed was subject to the iron ore tax, which is assessed in lieu of ad valorem property taxes. In August 2016, petitioners idled Empire Mine for an indefinite period of time. For the tax years at issue in this case, 2018 and 2019, no mining or production of mining products occurred at the Empire Mine. Despite the lack of production, respondents' submitted evidence that petitioners were considering

-1-

reopening, and petitioners presented evidence showing that it was physically impossible for mining to occur at the site.

On May 30, 2018, Michigan's Department of Environmental Quality (DEQ) issued letters to respondents, which indicated that because the Empire Mine had been, and would remain, idled during the 2018 tax year, the iron ore tax was not collectible. Respondents, however, reached the opposite conclusion and sent letters informing petitioners that the iron ore tax would still be assessed and collected for 2018. Respondents contended that, despite the fact that no iron ore was mined during those years, the statutory scheme permitted taxation on the basis of a five-year average, so there was still a basis for assessing a tax. Respondent Tilden Township calculated that the iron ore tax for 2018 would be $118,372, and respondent Richmond Township calculated the tax for that same year at $1,250,108. Petitioners appealed respondents' decision to collect the iron ore tax, arguing that the iron ore tax was not applicable to the Empire Mine for the tax year in question because the mine was idled for that entire year.[1]

Thereafter, on April 30, 2019, the DEQ wrote another letter to respondents, again stating that the idling of the Empire Mine meant that the iron ore tax should not be assessed against petitioners. Once more, respondents concluded that the iron ore tax was still statutorily required to be assessed in lieu of standard ad valorem property taxes under the GPTA. For 2019, Tilden Township calculated that petitioners owed $105,961.59 in iron ore taxes, while Richmond Township found that it was owed $1,124,841.01 for the same year. In response, petitioners appealed the assessment of iron ore taxes in 2019. The cases for both respondents and both tax years were consolidated.

On August 9, 2019, respondents moved for summary disposition under MCR 2.116(C)(8) and (C)(10). Respondents asserted that there was no factual dispute in the case because it was clear that the Empire Mine had been idled temporarily and that no mining had been conducted during the tax years in question. Respondents believed, however, that the lack of mining did not preclude the iron ore tax from being assessed against petitioners. Because the iron ore tax permitted taxation on the basis of a five-year rolling average, and mining occurred in 2014, 2015, and 2016, there was still a tax base under the statute. Therefore, while the lack of mining in the subsequent years would reduce the five-year average, it did not eliminate the tax. Respondents argued that the temporary status of the idling was an important distinction under the law because it meant there was still merchantable iron ore on the property, which was a reason for subjecting petitioners to the tax. Respondents argued that for petitioners to escape the iron ore tax before the five-year average expired, petitioners would have to prove that there was no more merchantable low grade iron ore on the property. Considering the documentary evidence suggesting that the Empire Mine would be reopening imminently, respondents contended that there was obviously still iron ore on the property.

---

[1] The case number being appealed, 18-003877-TT, originally only applied to petitioners' appeal of respondent Tilden's assessment of the iron ore tax. Petitioners appealed respondent Richmond's assessment of the tax in Case No. 18-003878-TT. However, the Tribunal consolidated the two appeals in an order on June 25, 2019, and ordered that all documents in both cases be filed under the case number now before this Court on appeal.

In response, petitioners argued that respondents had overlooked whether the iron ore tax *applied* to petitioners, and instead, improperly focused on how the tax should be *calculated*. Before reaching the issue of how to calculate a tax, petitioners contended, one must first consider whether they were subject to the tax. In order to do so, respondents were required to prove that there was specific statutory authority for assessing the iron ore tax. The statute relied on by respondents in this case, the iron ore tax, provides that it is applicable to "low grade iron ore mining property." Despite that language, respondents did not provide any explanation regarding whether the property in question was a "low grade iron ore mining property." If they had, they would have found that the statute defines a "low grade iron ore mining property" as "mineral bearing land from which low grade iron ore is mined," MCL 211.621(b)(1). Petitioners noted that the statute is written in the present tense, so it does not apply to property that was previously mined but was not presently being mined. Because, the record only shows that the property in question was not mined for the tax years in question, petitioners asserted the iron ore tax was wholly inapplicable to the property. Further, because the tax did not apply, petitioners asserted that the method of calculation was irrelevant, the assessment of the tax must be canceled, respondents' motion for summary disposition should be denied, and the Tribunal should grant summary disposition in favor of petitioners under MCR 2.116(I)(2).

Respondents countered that under the rules of statutory interpretation, the phrase "is mined" was not properly read as the present-tense form of a verb. Rather, it is merely a phrase describing the land subject to the statute. When considering the language of the statute in that light, it is clear that the Legislature intended the iron ore tax to apply to property that had been mined, is currently mined, or would imminently be mined in the future. Referencing other statutes that pertain to mining, respondents argued that the Legislature had shown that when it wanted to refer only to property actively being mined, it would use phrases expressly conferring that, such as "is being mined," "currently being mined," and "presently being mined." Alternatively, relying on caselaw, respondents argued that the Legislature's use of the present tense has often been construed to include the past tense as well. Finally, respondents argued that their interpretation of the phrase "is mined" avoided absurd results and did not render any part of the statute nugatory.

On November 14, 2019, an Administrative Law Judge (ALJ) issued a proposed opinion denying respondents' motion for summary disposition, granting petitioners' motion for summary disposition, and awarding a final judgment of canceling the iron ore tax for petitioners. Respondents filed exceptions to the proposed orders and judgment in favor of petitioners. Thereafter, adopting the conclusion of the ALJ, the Tribunal denied respondents' motion for summary disposition, granted summary disposition in favor of petitioners, canceled respondents' assessment of the iron ore tax, and ordered respondents to cure the issues within 28 days. Respondents moved for reconsideration, which the Tribunal denied.

## II. IRON ORE TAX

### A. STANDARD OF REVIEW

"Unless there is fraud, this Court's review of [Tribunal] decisions is limited to determining whether the [Tribunal] erred in applying the law or adopted a wrong legal principle." *West Mich Annual Conference of United Methodist Church v Grand Rapids*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket No. 352703); slip op at 2 (quotation marks and citation omitted).

-3-

"Issues of statutory interpretation are reviewed de novo." *Emagine Entertainment, Inc v Dep't of Treasury*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket Nos. 350376 and 350881); slip op at 3. Although agency interpretations of a statute are entitled to "respectful consideration," "they are not binding on courts and cannot conflict with the plain meaning of the statute." *In re Complaint of Rovas Against SBC Mich*, 482 Mich 90, 117-118; 754 NW2d 259 (2008). "Additionally, we review de novo a decision on summary disposition." *Emagine Entertainment*, ___ Mich App at ___; slip op at 3. It is proper to grant summary disposition to the opposing party under MCR 2.116(I)(2) "if it appears to the court that that party, rather than the moving party, is entitled to judgment." *West Mich Annual Conference of United Methodist Church*, ___ Mich App at ___; slip op at 3 (quotation marks and citation omitted).

## B. ANALYSIS

Respondents argue that the Tribunal erred by interpreting the iron ore tax statute to include a requirement that the property in question be actively mined during a given tax year. "When interpreting a statute, our goal is to discern and give effect to the Legislature's intent." *Foster v Van Buren Co*, 332 Mich App 273, 280; 956 NW2d 554 (2020). As recently reiterated by this Court:

> To do so, we begin with the statute's language. If the statute's language is clear and unambiguous, we assume that the Legislature intended its plain meaning, and we enforce the statute as written. In reviewing the statute's language, every word should be given meaning, and we should avoid a construction that would render any part of the statute surplusage or nugatory. [*West Mich Annual Conference of United Methodist Church*, ___ Mich App at ___; slip op at 4 (quotation marks and citations omitted).]

"It is well settled that ambiguities in the language of a tax statute are to be resolved in favor of the taxpayer," but "that tax *exemptions* are to be 'strictly construed' against the taxpayer[.]" *Honigman Miller Schwartz & Cohn, LLP v Detroit*, 505 Mich 284, 291 n 3; 952 NW2d 358 (2020) (quotation marks and citation omitted). Those principles, however, do not apply if the statute is unambiguous because, as noted above, the language of the statute controls when the statute's meaning is plain. See *West Mich Annual Conference of United Methodist Church*, ___ Mich App at ___; slip op at 4.

MCL 211.624(3)(b) provides that "[t]he tax provided in this act shall be in lieu of an ad valorem tax on . . . [t]he low grade iron ore mining property." In that regard, "[t]he township supervisor shall remove from the list of land descriptions assessed and taxed under the [GPTA] the land descriptions of property taxed under this act, and shall enter the land descriptions on a separate roll." MCL 211.624(2). Because of the preclusion of ad valorem property taxes under the GPTA, the iron ore act states that "[a] valuation shall not be determined for a description listed under this act and the property shall not be considered by the county board of commissioners or by the state board of equalization in connection with county or state equalization for taxation purposes." MCL 211.624(2).

The statutes provide for two different calculations of the tax owed by those properties subject to the tax. One subsection addresses taxation before "production of merchantable ore,"

MCL 211.622, and the other addresses taxation "after production of merchantable ore," MCL 211.623(1). The statutory scheme specifically identifies production of "merchantable ore," because " '[l]ow grade iron ore' means iron-bearing rock, also known as iron formation, jasper, ferruginous chert, or ferruginous slate, that is not merchantable as ore in its natural state and from which a merchantable product can be produced only by beneficiation or treatment involving fine grinding." MCL 211.621(a). With that understanding in mind, MCL 211.622 provides:

> Before the first calendar year *in which production of merchantable ore* from a low grade iron ore mining property has been established on a commercial basis, or before the period of construction of the plants for the beneficiation or treatment of low grade iron ore and the period of experimental operation of the plants, the low grade iron ore mining property shall be subject to a specific tax equal to the rated annual capacity of the plant in gross tons multiplied by .55% of the mine value per gross ton, based upon the projected natural iron analysis of the iron ore pellets or of the concentrated and/or agglomerated products, multiplied by the percent of construction completion of the low grade iron ore mining property. [Emphasis added.]

Whereas MCL 211.623(1) provides:

> Beginning with the first calendar year *after production of merchantable ore* from a low grade iron ore mining property has been established on a commercial basis, the low grade iron ore mining property shall be subject to a specific tax equal to the average annual production in gross tons during the preceding 5-year period, multiplied by 1.1% or beginning December 31, 2001 through December 31, 2006 0.75% of the mine value per gross ton, based on the average natural iron analysis of shipments for that year of the iron ore pellets or of the concentrated or agglomerated products. A year in which production did not take place shall be excluded in computing the average production but only until the property has a 5-year record of commercial production. Mine value is determined by subtracting from the published lower lake price of Lake Superior iron ore pellets, or the particular concentrated or agglomerated products as of December 31, for the subsequent calendar year, all the transportation and handling costs, including any tax charged for transporting or handling the iron ore pellets or products, from the mining property to Lake Erie ports. [Emphasis added.]

Considering the plain and unambiguous language of these statutes, MCL 211.622 provides for taxation before production of merchantable ore takes place, and MCL 211.623(1) provides for taxation after production of merchantable ore begins. However, even after production of merchantable iron ore begins, "[i]f the specific tax determined under [MCL 211.623] is less than the specific tax determined under [MCL 211.622], then [MCL 211.622] shall govern." MCL 211.624(1) (citations omitted).

In addition to addressing how the iron ore tax should be calculated on the basis of whether production of merchantable iron ore has begun, the statutes also address what properties are subject to the tax. MCL 211.622 provides that "the low grade iron ore mining property shall be subject to" the iron ore tax. Similarly, MCL 211.623(1) provides that "the low grade iron ore mining

property shall be subject to" the iron ore tax. The statutory scheme provides the following definition of such property:

> "Low grade iron ore mining property" means mineral bearing land from which low grade iron ore *is mined*, and includes the beneficiation or treatment plants, and other necessary land, buildings, facilities, equipment, tools, and supplies used in connection with the mining, transportation, and beneficiation or treatment of the low grade iron ore in producing merchantable iron ore pellets or other concentrated or agglomerated products. [MCL 211.621(b) (emphasis added).]

Petitioners and the Tribunal determined that the use of the present tense in the definition, "mineral bearing land from which low grade iron ore is mined," meant that the tax only applies to properties on which active mining is occurring during the tax year in question. Respondents, however, argue that the phrase "from which low grade iron ore is mined," was adjectival in nature and specifically modified the term "mineral bearing land." On the basis of that reading of the statutory language, respondents contend that the iron ore tax applies to property from which low grade iron ore is, was, could be, or has been mined.

This Court's duty is "to effect the intent of the Legislature," and "[i]f the statute's language is clear and unambiguous, we assume that the Legislature intended its plain meaning, and we enforce the statute as written." *West Mich Annual Conference of United Methodist Church*, ___ Mich App at ___; slip op at 4 (citations omitted). If the Legislature intended the iron ore tax to apply to mineral-bearing land from which low grade iron ore could be, is, was, or has been mined, the Legislature could have written the statute in that manner. As it stands, though, the statute provides that it only applies to land from which low grade iron ore "is mined." MCL 211.621(b). The word "is" is the present tense form of the verb "to be." *Merriam-Webster's Collegiate Dictionary* (11th ed), p 105. Consequently, the Legislature's use of the present tense must be considered when interpreting the phrase "is mined." See *Michalski v Reuven Bar Levav*, 463 Mich 723, 733; 625 NW2d 754 (2001). And we may not rewrite the statutory definition to include property that was mined in the past or property that could be mined in the future. Instead, applying the Legislature's chosen language as written, only property that is presently mined satisfies the definition of "low grade iron ore mining property."

In an attempt to escape that conclusion, respondents have raised a number of different arguments regarding why the property in question need not be mined in order to be subject to the iron ore tax. First, respondents insist that other sections of the statutory scheme would be rendered nugatory if the statute was read as the Tribunal held. When interpreting a statute, this Court "should avoid a construction that would render any part of the statute surplusage or nugatory." *West Mich Annual Conference of United Methodist Church*, ___ Mich App at ___; slip op at 4 (citations omitted). However, respondents' argument that parts of the statutory scheme would be rendered nugatory relies on respondents' misreading of the statutes in question. Pertinently, respondents argue that MCL 211.622 and MCL 211.623(1) specifically allow taxation under the iron ore tax for years when the mine was idled. Respondents rely on the portion of MCL 211.622 that provides for taxation "[b]efore the first calendar year in which production of merchantable ore from a low grade iron ore mining property has been established on a commercial basis . . . ." Similarly, MCL 211.623(1), which permits calculation of the iron ore tax on the basis of a five-year rolling average, states that "[a] year in which production did not take place shall be excluded

-6-

in computing the average production but only until the property has a 5-year record of commercial production." Respondents insist that because those sections permit calculation of the tax during years when no activity takes place at the mine, they would be rendered nugatory by requiring that the property be mined during the tax year in question.

Yet, MCL 211.622 allows taxation under the iron ore tax before *production* of merchantable ore occurs. Likewise, MCL 211.623(1) permits the tax to be calculated by simply leaving out years when *production* does not occur, until the five-year average is established. The implication, then, is that after establishing the five-year average, years without *production* will be included in the five-year average, causing it to lower, but not entirely precluding the tax. Notably, both of those statutes address years when *production does not occur*, but they do not explicitly address application of the tax when *mining does not occur*.[2] In context, the lack of reference to years when mining does not occur is logical because, as explained above, the definition of low grade iron ore mining property only accounts for property that is mined, not property that was mined in the past or could be mined in the future. Because the language in both MCL 211.622 and MCL 211.623(1) relates to production, not mining, it is not rendered nugatory by an interpretation that limits application of the iron ore tax to properties that are presently being mined.

Next, respondents contend that the Tribunal's construction of the statute was improper because it was over-reliant on the statute's use of the present-tense form of the verb "is mined." MCL 211.621(b). More specifically, respondents assert that Michigan appellate caselaw has construed the Legislature's use of the present-tense form of verbs to also include past and future usage. Respondents rely on our Supreme Court's decision in *Shinholster v Annapolis Hosp*, 471 Mich 540; 685 NW2d 275 (2004). In that case, the Court considered MCL 600.1483, which provides a damages cap for noneconomic damages as a result of medical malpractice. *Shinholster*, 471 Mich at 560. The statute provides for the damages cap to be raised when "[t]he plaintiff *is* hemiplegic, paraplegic, or quadriplegic resulting in a total permanent functional loss of 1 or more limbs caused by . . . [i]jury to the brain . . . [or] [i]njury to the spinal cord." MCL 600.1483(1)(a) (emphasis added). The Court considered whether the Legislature's use of the word "is" meant that the plaintiff had to be hemiplegic, paraplegic, or quadriplegic at the time of judgment to benefit from the raised cap on noneconomic damages. *Shinholster*, 471 Mich at 560. The Court declined

---

[2] "Mining" and "production" do not mean the same thing under the statutory language. Again, the tax in question only applies to "mineral bearing land from which low grade iron ore is mined . . . ." MCL 211.621(b). Under MCL 211.621(a), " '[l]ow grade iron ore' means iron-bearing rock . . . that is not merchantable as ore in its natural state and *from which a merchantable product can be produced only by beneficiation or treatment* involving fine grinding." (Emphasis added.) In considering just these two definitions, it is apparent that "low grade iron ore" is mined from property, and that merchantable iron ore is then produced. As a result, for the purposes of this statute as related to this case, "mining" relates to removing the low grade iron ore from the ground, while "production" relates to beneficiating or treating low grade iron ore so that it becomes merchantable iron ore. As it is apparent that the terms do not share a meaning, and as the precise definitions of the terms is unnecessary for resolution of this case, we need not address whether the Tribunal erred by not referencing a technical dictionary. See *TM v MZ*, 501 Mich 312, 317; 916 NW2d 473 (2018) (noting that this Court will generally not entertain moot issues).

-7-

to adopt that reading of the statute, reasoning that the argument gave "extraordinary and undue weight to the fact that the Legislature has used the present tense of the verb[] . . . ." *Id*. at 565. The Court noted that the Legislature, in a different subsection of the same statute, used the past-tense form of the verb to raise the noneconomic damages cap when "[t]here has been permanent loss of or damage to a reproductive organ resulting in the inability to procreate," MCL 600.1483(1)(c). *Shinholster*, 471 Mich at 565-566. Rather than hold that the statute required a plaintiff to be hemiplegic, paraplegic, or quadriplegic at the time of judgment, the Court opined that, "we believe that the better interpretation of the statute is that, as long as a plaintiff suffers, while still living and as a result of a defendant's negligent conduct, one of the enumerated conditions set forth in [MCL 600.1483], the statute's higher damages cap applies." *Shinholster*, 471 Mich at 567.

The analysis in *Shinholster* does not apply to this case because the legal issue presented is different. The argument in *Shinholster* was that the Legislature's use of the present-tense form of the verb "is," meant that the circumstances considered by the statute had to exist at the time of judgment. That, plainly, is not the same argument as this case. Rather, under the plain language of the statute, the property had to be mined during the tax year in question for it to be subject to the iron ore tax. In other words, this case does not contain an argument that the term "is mined," meant that the property had to be actively mined at the time the Tribunal rendered its judgment. Consequently, *Shinholster*'s analysis simply does not apply to this case.

Next, respondents argue that the Tribunal's reading of the statute to have an active mining requirement would cause absurd results. Respondents suggest that a mine could shut down for December 31 of each year—the day when applicable taxes are determined—and entirely avoid the iron ore tax for the entire existence of the mine. It is true that, "[s]tatutes must be construed reasonably, 'keeping in mind the purpose of the act, and to avoid absurd results.' " *Bauer v Saginaw Co*, 332 Mich App 174, 193; 955 NW2d 553 (2020), quoting *Rogers v Wcisel*, 312 Mich App 79, 87; 877 NW2d 169 (2015). However, the absurd-results rule "applies only when statutes are ambiguous." *Taylor v Bd of Water & Light*, 272 Mich App 200, 207; 725 NW2d 84 (2006). Therefore, "if the language is plain and unambiguous, we may not depart from a literal construction even to avoid an absurd or unjust result, lest we engage in impermissible judicial lawmaking[.]" *Taylor v Bd of Water & Light*, 272 Mich App 200, 207; 725 NW2d 84 (2006) (citation omitted). Here, because the statutory language is plain and unambiguous, respondents' argument is without merit.

In sum, the iron ore tax only applies to "low grade iron ore mining property," which the statute defines as "mineral bearing land from which low grade iron ore is mined . . . ." MCL 211.621(b). Under the plain and unambiguous meaning of that statutory language, the iron ore tax can only be levied against properties that were mined during the tax years in question. Because it is undisputed that, in the present case, the properties in question were not mined, the Tribunal properly determined that assessment of the iron ore tax against petitioners should be canceled and summary disposition granted to petitioners under MCR 2.116(I)(2).

## III. VALUATION UNDER THE GPTA

Next, respondents argue that the Tribunal abused its discretion by closing the case when issues remained that required discovery and additional rulings from the Tribunal. Specifically,

respondents believe that they should have been allowed discovery to determine valuation under the GPTA and that the Tribunal reversibly erred by cancelling the iron ore tax and closing the case without deciding anything related to valuation under the GPTA.

Generally, issues regarding the decision of the Tribunal are preserved for review by this Court when they are raised, addressed, and decided by the Tribunal. *Toaz v Dep't of Treasury*, 280 Mich App 457, 463; 760 NW2d 325 (2008). Here, respondents contend that they raised the issue of whether discovery regarding valuation and its ultimate calculation would be required. In support of that argument, respondents cite to "Respondents' Prehearing Statement, p 4." A review of the Tribunal's electronic record does not reveal any document fitting that description. Further, respondents have not provided a copy of the purported document to this Court on appeal.

Respondents also insist that they raised the issue in a prehearing conference summary. The summary includes the following sentence: "The property's [true-cash value] and [taxable value] are at issue for each tax year under appeal." While that document does appear in the Tribunal's record, it is a single sentence in an eight-page document, and it appears immediately after several statements regarding respondents' insistence that the true-cash value and taxable value of the properties in question were never calculated because they were subject to the iron ore tax, not general ad valorem taxes under the GPTA. The sentence is also contrary to the respondents' assertions in a "Notice of No Valuation Disclosure" that was filed with the Tribunal. As a result, it is unclear if the sentence at issue was included by mistake. In any event, the single sentence, unsupported by any factual or legal analysis, is insufficient to raise the issue. The Tribunal "was not obligated under MCR 2.116(G)(5) to scour the record to determine whether there exists a genuine issue of fact to preclude summary disposition." *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 381; 775 NW2d 618 (2009) (quotation marks and citation omitted). Instead, respondents "had the obligation to 'set forth specific facts showing that there is a genuine issue for trial,' MCR 2.116(G)(4), which they did not do." *Barnard Mfg Co*, 285 Mich App at 381. Stated differently, the Tribunal was not required to go back in its records, find a single sentence in a summary of a prehearing conference or read a document which it did not have in its electronic record and assist respondents in establishing that summary disposition was not warranted. See *id*.

Based on the record before this Court, the first time that respondents raised the issue regarding valuation and discovery was their motion for reconsideration of the Tribunal's final opinion and judgment. A claim before the Tribunal "was not preserved because it was first raised in a motion for reconsideration." *D'Agostini v Dep't of Treasury*, 322 Mich App 545, 561; 912 NW2d 593 (2018). When an issue is unpreserved, this Court need not consider it. *Id*. Consequently, by bringing the issue to the Tribunal's attention for the first time in a motion for reconsideration, respondents have failed to preserve this issue for this Court's review, and we decline to consider it.

Affirmed. Petitioners may tax costs. MCR 7.219(A).

/s/ Kathleen Jansen
/s/ Michael J. Kelly
/s/ Amy Ronayne Krause